## No. 11,142.

A. M. HOLLINGSWORTH ET AL. VS. A. R. THOMPSON, TAX COLLECTOR.

1. When a question arises in a court of law as to the *existence* of a statute, or as to the *time when* a statute took effect, or as to the precise *terms* of a statute, the judge who is called upon to decide it has the right to resort to any source of information which, in its nature, is capable of conveying to the judicial mind a clear and satisfactory answer to the question.

2. When the Constitution does not require legislative journals to affirmatively show that a particular thing, necessary to legislative action, was done, mere silence will not invalidate; and, in such case, it will be presumed that the Legislature observed their obligation, and did not pass the bill without sufficient proof of proper proceedings having been taken.

3. The unconstitutionality of an act duly enrolled, authenticated by the signatures of the presiding officers, and approved and signed by the Governor, must be affirmatively and clearly shown before a court of justice is authorized to treat it as void on account of same not having been passed in accordance with the rules of parliamentary law prescribed in the Constitution.

Hollingsworth et al. vs. Tax Collector.

4. From considerations of public policy, and because of the respect due the action of a co-ordinate department of government, courts will supply apparent omissions from legislative journals, by presumptions as to the regularity of the proceedings of the General Assembly; and it is a rule that has been found most salutary.

5. The Legislative act creating the Bossier Levee District made no provision for a new, separate, or additional *assessment* of property within the district, the only duty in this regard that it cast upon the levee commissioners being to levy the taxes contemplated thereunder. They were not empowered to make any new valuation or appraisement; nor is the parish assessor authorized or required to make a new assessment. The board of reviewers were not entrusted with the performance of any duty in respect to such tax. The only question of doubt or uncertainty that could arise under the operation of this statute is one of *fact*—namely, whether the land on which the levy of taxes is made was or not *alluvial*, and consequently subject to the tax *vel non;* and it does not involve a question of constitutionality of the law.

A PPEAL from the Second District Court, Parish of Bossier.
*Watkins, J.*

*Land & Land* and *Alexander & Blanchard* for Plaintiffs and Appellants:

1. Act 89 of 1892 was not enacted as a statute of the State, because the House Bill was amended by the Senate, and one of the amendments was not concurred in by the House by a yea and nay vote spread on the journal, as required by Article 38 of the Constitution of 1879. Cooley on Constitutional Limitations, 164; 165, 171; 94 U. S. 260; 105 U. S. 667; 43 An. 590; Sutherland on Statutory Construction, Secs. 41, 48, 65, 66.

2. If constitutionally enacted as a law, Act 89 of 1892, in providing for an assessment of property for taxation, without notice to the persons taxed and opportunity for confirming or contesting the charge before some officer, board or court, deprives them of their property without "due process of law." Cooley on Taxatios, Secs. 265, 266, 267; 133 U. S. 660; 115 U. S. 321; 111 U. S. 701; 95 U. S. 37; 2 An. 837.

*Bell & Randolph* for Defendant and Appellee:

1. Every presumption is in favor of the validity and regular passage of an act appearing in the published statutes and signed by the Speaker of the House Lieutenant Governor and the Governor, attested by Secretary of State. Cooley on Constitutional Limitations, p. 164 (136); Am. Dig. 1891, *verbo* Statutes, p. 4130; 42 An. 1098; City vs. Robira, 5 R. 383; 44 N. W. R., p. 1047; 36 N. W. R., p. 443; 10 S. W. R., p. 310.

2. A statute may be partly void and partly valid. If, when the unconstitntional part is stricken out, that which remains is complete in itself, and capable of being executed in accordance with the apparent legislative intent, wholly independent of that which was rejected, it must be sustained. Cooley, Con. Lim., pp. 211 and 212 (5th Ed.); 14 An., p. 7; 42 An., p. 92; 33 An. 253. This doctrine applies to all statutes alike, whatever may be the grounds of the invalidity of

their bad parts. What is void in the law may be stricken out and it is duty of courts, if what remains can be enforced independent of part stricken, to uphold that much. State vs. Deal, 4 So. Rep. 909, Maxwell, C. J.; 39 An. 460.

3. Objections based on the principle "due process of law" do not apply to tax cases. 39 An. 455. The valuation or assessment put on property for purposes of State taxation shall be taken as the proper valuation for purposes of local taxation in every subdivision of the State. Constitution 1879, Art. 203.

The opinion of the court was delivered by

WATKINS, J. The object of this suit, and the prayer of the plaintiffs' petition is that the tax collector of the parish of Bossier be restrained and perpetually enjoined from collecting from them " the ten mill tax, the acreage tax, and the tax on cotton, levied for the year 1892 " by the commissioners of the Bossier Levee District, under and in alleged conformity to the provisions of Act 89 of 1892, and that it be adjudged and decreed that said act " is not a law or statute of the State of Louisiana," and that the levy of said taxes is illegal, unconstitutional and void.

It is further alleged and prayed that, if it is ascertained and decided that said act was passed and approved in pursuance of the forms prescribed and required by the Constitution and laws of the State, said levy of taxes should be decreed null and void, because it is violative of the State and Federal Constitutions.

The grounds on which the foregoing relief is demanded are particularized and stated at length, and circumstantially, in the plaintiffs' petition, to be, that said Act 89 of 1892—it being an act to create the Bossier Levee District of the State of Louisiana—was published and promulgated as a law of this State, whereas it is a fact that said act was never passed or enacted by the General Assembly of the State according to requirements of the Constitution and parliamentary law, for the reason that there was introduced and passed in the House of Representatives a bill with the same title as that of said Act 89 of 1892, which was thereafter sent to the Senate, and concurred in with certain amendments, five in number. That the said bill, with its amendments, was thereupon returned to the House of Representatives for its concurrence in said Senate amendments. That among said amendments was one—it being the fifth or last in regular order of adoption—purporting that there shall be no compensation or salary allowed to any levee commissioner for services rendered as such other than actual expenses, to be ascertained and

allowed by the board; and that the House of Representatives, upon considering and passing upon the said Senate amendments, concurred in the *four preceding* amendments by a yea and nay vote, as required by the Constitution, but "that said *fifth* amendment was not called up, read or voted on in said House * * * and was not concurred in by said House, nor acted on in any manner by either House from and after its adoption by the Senate, as hereinbefore set forth," as required by Art. 38 of the Constitution.

That the journal of the House of Representatives does not show any concurrence by the House in said Senate amendment No. 5, and that for the want of said concurrence said bill failed to become a law or enactment of the General Assembly, and was on that account improperly and unlawfully signed and promulgated as a law.

Petitioners represent that the Governor of the State appointed, under the aforesaid act, levee commissioners, who convened, organized and levied the taxes complained of as illegal, on the ground that the legislative act is illegal and unconstitutional for the reasons and causes we have enumerated; and, further, because, if otherwise valid, it is void, because it conflicts with the Constitutions of the State and the United States, in that (1) it authorizes a tax of ten (10) mills to be levied upon all property within said levee district subject to taxation; and (2) the levy of a forced contribution of five (5) cents an acre on each and every acre of land within said district that is alluvial; and, further, because, in the matter of said assessments, the said law contains no provision for notice to the tax-payer, and affords him no opportunity to be heard on the question of the *listing and valuation* of his property before any officer, board or court; but, on the contrary, makes the tax assessor an arbitrary judge *as to what lands are subject* to taxation, *and what are exempt, and as to what persons* shall be assessed and the valuation thereof—thus depriving petitioners of their property without " due process of law," in violation of the Constitution of the United States, and depriving them of " the right of testing the correctness of their assessments before the courts of justice" within the intendment of the provisions of Art. 203 of the Constitution of the State.

Defendant's answer admits the levy, assessment and proceedings having been inaugurated for the collection of the tax as well as the forced contribution complained of, but it avers the legality and constitutionality of the act, and alleges that same was regularly passed

and approved in accordance with forms of law and the requirements of the Constitution.

It distinctly and particularly alleges that Senate amendment No. 5 was concurred in by the House of Representatives, and that such concurrence is shown by the journals of the Senate and House of Representatives.

"He further avers that if the court should find that the House ournal does not particularize the said amendment, as it may appear in the purported printed journals, that the failure to particularize is an omission and mistake and error of the printer or minute clerk of the House, and that the true record and journal of the House and the engrossed bill and endorsements thereon show that the fifth Senate amendment, as well as all the other amendments, were concurred in by the House." (Plaintiff's brief.)

It finally denies that said act violates any article of the State or Federal Constitution, or that it contemplates the taking of property without due process of law.

On the trial there was judgment in favor of the defendant, and the plaintiffs have appealed.

The two propositions that are thus presented for consideration and decision are, (1) whether Act 89 of 1892 is unconstitutional, *intrinsically*, and (2) whether it is constitutional *extrinsically*.

## I.

The effort is made by the plaintiffs to show by the legislative journals of the session of the General Assembly of 1892 that the published and authorized statutes of that year contain an *incorrect* report of the law as it was *actually* and *really* enacted; and that the proof afforded by the journals discloses that the original bill, as it was adopted in the House of Representatives where it originated, was amended in the Senate, and that the amendments were not subsequently concurred in by the House of Representatives. That it shows that unless the proposed amendments were accepted by the House of Representatives, there was no concurrence of the two houses of assembly, and the unconstitutionality of the whole statute necessarily follows:

Looking into the journals we find the following pertinent facts, to-wit:

Hollingsworth et al. vs. Tax Collector.

*Senate Journal, June 23.*

" House Bill No. 257.

' By Mr. Boggs:

" An Act to Create the Bossier Levee District of the State of Louisiana. &ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast;

" Reported favorably by the Committee on Agriculture, Commerce and Levees, with the following amendments, which were read: In line 17, section 1, page 3, after the word ' dividing ' strike out the words, ' township 20 and 21 N.,' and insert in lieu thereof the words, ' the north half from the south half of township 20 N.'

" In line 26, section 1, page 3, after ' 21 N.,' strike out the figures ' 19 and 20,' and insert in lieu thereof the words, ' and the south half of township 20 N.'

" In line 1, section 2, page 5, after the word ' act,' strike out the word ' four,' and insert in lieu thereof the word ' five.'

" In line 13, section 3, page 6, after the word ' times,' add the words, ' and at such place as is most convenient.'

" Add the following at the end of section 3: ' There shall be no compensation in salary allowed to any commissioner for his service as such; provided, however, the board may allow to each commissioner the actual expenses incurred by him in attending the meetings of the board and while engaged in the performance of duties ordered by the board.'

" On motion of Mr. Stroud, the amendments were adopted.

" The bill was read in full as amended.

" Mr. Stroud moved that the bill be passed to its third reading.

" The motion was agreed to. (See pp. 250–251.) "

*June 27.*

" The bill passed the Senate on a yea and nay vote, the title was read and adopted, and a motion to reconsider laid on the table. (See p. 277.) "

*House Journal, June 28.*

" Senate returned, ' with amendments,' House Bill No. 257. (See p. 503.)

" House Bill No. 257.

" By Mr. Boggs:

" An Act to Create the Bossier Levee District of the State of Louisiana &ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast;

was taken up with the following Senate amendments:

" In line 17, section 1, page 3, after the word ' dividing,' strike out the words, ' township 20 and 21 N.,' and insert in lieu thereof the words, ' the north half from the south half of township 20 N.'

" In line 26, section 1, page 3, after the figures ' 19,' strike out '20 and 21 N.,' and insert in lieu thereof the words, ' and the south half of township 20 N.'

" In line 1, section 2, page 5, after the word ' act,' strike out the word ' four,' and insert in lieu thereof the word ' five.'

" In line 13, section 3, page 6, after the word ' times,' add the words, ' and at such places as is most convenient.'

" Mr. Boggs moved that the House do now concur in the Senate amendments.

" The roll being called resulted as follows: .

" Yeas          *          *          *          *          *

" Total, 76.

" Nays, none.

" Absent        *          *          *          *          *

" And the House concurred in the Senate amendments.

" Mr. Boggs moved to reconsider the vote by which the Senate amendments were concurred in, and on his motion the motion to reconsider was laid on the table.

" See pages 508 and 509."

From the foregoing it appears that the claim is made that the House of Representatives failed to concur in what is termed the *fifth amendment*, which provides that " there shall be no compensation in salary allowed to any commissioner for his service as such," etc., and that on that account the statute is null and void *in toto*.

The evidences relied upon by the defendant as establishing the converse of that proposition are: (1) The presence in the authorized and published statutes of the legislative act in its entirety, inclusive of the fifth Senate amendment, same being made up from the enrolled house bill. (2) By the entry in the House journal, *supra*, namely, " and the House concurred in the Senate amendments," in pursuance of a preceding entry to the effect that a member " moved that the House do now concur in the Senate amendments." (3) By the further entry in the House journal of the yeas and nays taken on said motion, resulting in seventy-six (76) yeas and " nays none." (4) By the entry in the Senate journal of a communication received from the House of Representatives to the

effect that the House had passed and asks concurrence in the bill " creating the Bossier Levee District."

To the foregoing testimony no objection was urged, both parties conceding its admissibility, taken in connection, as it is, with the published statutes of the Legislature; but when the defendant's counsel offered in evidence " the original *engrossed House bill* No. 257, with all indorsements thereon, including the original Senate amendments attached thereto," plaintiffs' counsel objected on the ground that same was inadmissible because " the journals of the House are the best and exclusive evidence of the proceedings of said House, and (that) no other, of any kind, is admissible" for that purpose.

The court ruled to receive it in evidence, and properly, in our opinion.

In Gardner vs. The Collector, 6 Wallace, 499, the Supreme Court had under consideration and decided a similar question involving the legal enactment of a law of Congress, and on which they expressed this view:

" We are of opinion, therefore, on principle as well as authority, that whenever a question arises in a court of law of the *existence* of a statute, or of the *time* when a statute took effect, or of the precise *terms* of a statute, the judges who are called upon to decide it have a right to resort to *any source of information which in its nature is capable of conveying to the judicial mind a clear and satisfactory answer to such question,"* etc. (Italics are ours.)

This conclusion was stated as the result of an examination of authority, though it was preceded by a statement even more forcible and clear, viz.:

"The second proposition, that 'if the president's record is defective in respect to the *year* when it was made, *no resort can be had to extrinsic evidence* to supply that defect' is still more at variance with both principle and authority," etc.

We had occasion to express a similar opinion upon a somewhat similar question in State ex rel. Morris vs. Secretary of State, 43 An., at page 613, to-wit:

" Nor can we see the impropriety of the judge admitting the papers that were offered by the respondent. They were at least of a *quasi* official character, and will, evidently, aid us in determining the true character and value of the published volumes, which purport to be official journals."

On reason and authority we regard the engrossed House bill as a proper subject for consideration, in connection with the journals kept of legislative proceedings. It is the *res*, the *very* subject matter *then* under legislative consideration. It proves *rem ipsam*, if it proves nothing more.

Looking into the engrossed bill we find it to conform to the act as published in the statutes of the year 1892, embodying in its third section the substance of the fifth Senate amendment. The endorsements thereon disclose fully all the stages of legislation through which it passed, from the time of its introduction in the House of Representatives to final action thereon. They show that the bill finally passed the House by a vote of *sixty yeas and no nays*.

That it was adopted in the Senate with amendments, and physically annexed to this engrossed bill are the Senate amendments.

That when the bill was returned, in its amended form, to the House, action thereupon was taken, and, in confirmation thereof, the clerk of the house made thereon this endorsement, to-wit:

" Received from Senate with amendments. Roll called on concurrence in amendments. Yeas 76, nays 0. Concurred in."

That, subsequently, on the 6th of July, it was endorsed thus, to-wit:

" Enrolled and signed by the speaker and presiding officer of the Senate, and taken to the Governor for executive approval."

This evidence, collectively taken, points, in our opinion, with unerring certainty to the conclusion that the failure was of the clerical force in the House of Representatives to make an accurate and complete report of the proceedings had upon the Senate amendments, in journalizing them for the day, or in the preparation of the official copy thereof for publication; and not that of the House of Representatives to clearly express *its approval of the fifth Senate amendment to the bill*.

And when thus considered and construed, our conclusion must be that the House did concur in all of the Senate amendments.

There is no provision of law, constitutional or statutory, which requires an amendment to a bill to be printed in the journal of either House of the General Assembly, or in the State gazette, or the official journal of legislative proceedings.

In Morris vs. Secretary, cited *supra*, we quoted at page 613, Art. 28 of the Constitution, and extracts from Section 10 of Act 6 of 1881

—the public printing act—and said: " In these extracts we have all the law applicable to the printing and publication of the proceedings of the General Assembly in newspapers and journals."

The injunctions of the Constitution are (1) that " each house shall keep a journal of its proceedings and cause the *same* to be published immediately after the close of the session" of the General Assembly; (2) and, " when practicable, the minutes of *each day's session* shall be printed and placed in the hands of members;" (3) " the original journal shall be preserved, after publication, in the office of the Secretary of State; but there shall be required no other record thereof." Art. 28 of Constitution.

The printing law simply declares " that within two days after the journal of each house shall have been approved, the State printer shall publish the same as so approved." Sec. 10, Act 6, 1881.

With regard to amendments the constitutional requirement is that " no amendment to bills by one house shall be concurred in by the other except by a vote of a majority of the members elected thereto, taken by yeas and nays, and the names of those voting for or against recorded upon the journal thereof. And reports of committees of conference shall be adopted in either house only by a majority of the members, the vote to be taken by yeas and nays." Art. 38 of Constitution.

As announcing a different conclusion counsel for appellant cites and relies upon a paragraph they have selected from Morris vs. Secretary to the effect " that the failure of the secretary to enter one would have resulted just as fatally to the proposed amendment as the failure to enter the other." *Vide* p. 641.

It is sufficient to observe that the *amendment* there referred to was an amendment to the *Constitution*, and not an amendment to a legislative bill—an entirely different matter.

This question has repeatedly passed under judicial investigation by different courts in other States of the Union, and they have expressed views similar to the one we entertain.

In Hill vs. Steele, 2 Southern Reporter, 650, it was assigned as an unconstitutionality of an act of the Alabama Legislature that the Senate journal failed to show " that the report of the committee of conference * * * was adopted by the Senate," and of it the court said:

"We have uniformly held that when the *Constitution does not require* the journals to affirmatively show that a particular thing, necessary to the validity of the legislative action, was done, *mere silence* will not invalidate; and in such case we will presume that the Legislature observed their obligation, and did not pass such bill without sufficient proof that the proper notice was given. The unconstitutionality of an act enrolled, authenticated by the signatures of the presiding officers, and approved and signed by the Governor, must be *affirmatively and clearly* shown before the *courts* are authorized to treat it as void, because not being passed in accordance with the rules of parliamentary law prescribed in the Constitution." (Italics ours.)

To the same effect are the following cases: Walker vs. Griffith 60 Ala. 361; Clark vs. Jack, Id. 271; State vs. Peterson, 36 N. W. Rep. 443; State vs. Hastings, 24 Minn. 78; Miller vs. State, 3 Ohio, St. 475; Williams vs. State, 6 Ohio, 549; Supervisors vs. People, 25 Ill. 181; Harrison vs. Railroad Co., 77 Ill. 11; Worthern vs. Budgett, 32 Ark. 496; State vs. Algood, 10 S. W. Rep. 310.

After making careful examination of many adjudications on the subject we have nowhere found the rule more carefully or correctly stated than by the Arkansas court in Glidewell vs. Martin, 11 S. W. Rep. 883:

"From considerations of public policy," say the court, "and because of the respect due the action of a co-ordinate department of government, the courts long since began to supply the omissions of journal clerks by presumptions as to the regularity of the proceedings of the General Assembly. This has been found most salutary; and the attitude assumed by the judiciary in this regard has gone far toward establishing and maintaining public confidence in the stability of legislative action. * * * The courts are gravitating toward the English rule, so thoroughly discussed in Chicot Co. vs. Deane, 40 Ark. 200; for while they say that the enrolled bill is not *conclusive* proof of the valid enactment, and that we may look beyond it to the journals, they supply, by *presumption, everything necessary to its validity, save when the journal affirmatively shows a violation of the Constitution.*"

In view of the fact that an amendment to a pending bill is not required, by either the Constitution or the law, to be printed in the journals; and in view of the fact that the constitutional requirement

is that concurrence by one house, in an amendment made by the other, shall *only* be evidenced by "a vote of the majority of the members * * taken by yeas and nays;" the absence of an amendment or a part of one from the journal could not, with fairness or propriety, be construed as annihilating the whole statute.

In our opinion there is no question of the constitutionality of the law in this respect.

## II.

The act, considered extrinsically, is alleged to be unconstitutional, in that it authorizes a tax of ten (10) mills to be levied upon all property within said district, subject to taxation for levee purposes, and the levy of a forced contribution of five (5) cents an acre on each and every acre of land within the said district that is *alluvial;* and, that in the matter of assessment of the property, the law contains no provision for notice to the tax-payer, and affords him no opportunity to be heard on the question of the listing and the valuation thereof before any officer, board or court; but on the contrary, makes the tax assessor an arbitrary judge *as to what lands are subject to taxation and what are exempt,* and as to what persons shall be assessed, and *at what valuation property shall be assessed,* thereby depriving petitioners of their property "without due process of law," in violation of the State and Federal Constitutions; and depriving them of "the right of testing the correctness of their assessments before the courts of justice" in violation of the 203d article of the Constitution of this State.

If this statement be accurate, the taxing statute is most radically defective and glaringly unconstitutional, indeed.

But an examination of the provisions of the act discloses the following governing provisions relative to the listing and valuation of the property of the levee district:

Section 1 provides "that all that portion of the *alluvial* lands in the parish of Bossier, embraced and situated within" prescribed limits are incorporated into a levee district.

Section 6 provides that the commissioners appointed for said levee district, "for the purpose of raising revenue to carry out the objects contemplated by the act, may levy annually, for levee purposes, a district levee tax of ten (10) mills on the dollar *of its assessed valuation, and it shall be the duty of the assessor to extend the said tax upon*

*the tax rolls; and the assessor shall make,* without additional compensation, *separate rolls for the part of the parish included in this district,* which rolls shall be deposited, etc.,   *   *   *   and the tax collector of the parish shall collect the said district levee tax, in the same manner as State taxes are collected,'' etc.

Section 7, in like manner, provides for the *levy* of a local assessment upon property of the levee district, and for its extension upon the tax rolls of the parish, and for its collection in like manner.

From the foregoing it clearly appears that the commissioners are empowered to make a *levy* of taxes upon properties that have been already listed and valued, or assessed. The *rate* of this levy must be, necessarily, restricted, and confined to '' the assessed valuation'' of the property. When such levy is made then it becomes the duty of the assessor to make '' separate rolls for the part of the parish included in the (levee) district.'' Subsequently, the tax collector of the parish proceeds in the collection of this tax as that of other taxes. A new or independent assessment for levee purposes is not contemplated by the act. The levy to be made by the levee commissioners must be laid on the assessment already complete and finished. The duties of the commissioners in this regard are confined to the *levying* of the taxes. Gaither vs. Green, Tax Collector, 40 An. 362.

Had the statute made provision for an additional assessment for levee purposes, in our opinion it would have been violative of that provision of Article 203 of the Constitution which declares that '' the valuation put upon property for the purpose of State taxation shall be taken as the proper valuation for purposes of local taxation in every subdivision of the State.''

The duties of levee commissioners in this regard are, under the terms of the statute, exclusively confined to the levying of district levy taxes upon *alluvial* lands of the levee district which are subject to taxation for levee purposes. They have nothing to do with their valuation. Nor has the assessor. Nor is the aid of the parish board of reviewers brought into requisition. Nor was there any occasion for the assistance of either. They had, already, and completely, performed their duties in reference to the *parish* assessment, and there was no additional service required, or necessary to the consummation of the levy of taxes for levee purposes.

Under this view of the law, it appears to be manifest that the only question of doubt, or difficulty that could arise, is one of fact, and that is the liability *vel non* of the property for levee taxes, as *alluvial* land. That question is not one of assessment, but is altogether separate and distinct from assessment proceedings, and not concluded by the decision of the board of reviewers. Of course the tax-payer's right to test the *liability* of his property for the payment of the levee tax on the ground that it was *not alluvial* would be recognized, independently of the determination of the levee commissioners.

In any view that can be taken of the statute in question, it is our opinion that it is constitutional.

Judgment affirmed.