95 So.2d 148

John C. DAVES, Jr.

v.

SEWERAGE DISTRICT NO. I OF The PARISH OF JEFFERSON, State of Louisiana.

No. 43506.

May 14, 1957.

. Ray C. Clement, New Orleans, for plaintiff-appellant.

McDonald & Buchler, Willis C. McDonald, Metairie, Patrick E. Carr, New Orleans, for defendant-appellee.

McCALEB, Justice.

Acting under the provisions of Act 119 of 1950, as amended by Act 21 of the Extraordinary Session of 1951, the Board of Supervisors of Sewerage District No. 1 of the Parish of Jefferson caused to be published a series of notices of its intention to construct sewers and sewage disposal works within the confines of Sub-Sewerage District No. 1 of said sewerage district and, following disposal of all objections which were filed to the plan, advertising for bids, letting contracts, ordering commencement of the work and taking all other preliminary action required by the above cited acts, adopted, on October 17,

1956, local or special assessment Ordinance No. 1 of 1956, wherein it assessed all properties fronting on certain streets listed therein on the basis of $9.60 per front foot, to provide for the payment of the cost of the sewer lines, the construction of the lift stations and the construction of the sewage disposal plant. This ordinance was amended in minor respects on January 17, 1957, and again, on April 9, 1957, when the Board of Supervisors provided for the acceptance of a bid by Scharff & Jones, Inc. and others for the purchase of $1,525,000 of sewer certificates to be issued by the District, representing the unpaid cost of construction of the sewerage system.

On April 22, 1957, plaintiff herein, a resident of the Sub-Sewerage District No. 1 and an owner of real property on which a front footage assessment has been levied by the ordinance of October 17, 1956, brought the instant suit in which he seeks to have the assessment declared illegal, null and void and also to have the defendant sewerage district restrained from delivering the $1,525,000 of sewerage certificates to the purchasers thereof.

In his original petition, to which an exception of no cause of action was filed and overruled, plaintiff set forth three grounds of attack which were later stipulated as the only questions presented to the district court for decision. However, in a supplemental and amended petition filed on May 3, 1957, plaintiff added over 21 other grounds of complaint and the case thereafter proceeded to trial on the issues thus presented by the numerous contentions.

Following a hearing, the judge, finding that none of the complaints was meritorious, dismissed the suit assigning written reasons therefor. Plaintiff has appealed and the case has been submitted for our decision without oral argument on joint motion of the parties in accordance with Section 9 of Rule IX of this Court.

We note at the outset that the defendant board is pleading, as a bar to plaintiff's suit, the peremption of 60 days provided by the amendatory Act 21 of the Extraordinary Session of 1951 and the judge sustained this plea as to most of the grounds of attack asserted by plaintiff.

We have no doubt of the correctness of the judge's ruling on this phase of the case and are of the opinion that all of plaintiff's many complaints directed against the legality of the assessment levied on his property are barred by the statutory peremption.

Sub-Sewerage District No. 1 of Sewerage District No. 1 of the Parish of Jefferson was created pursuant to the authority of Section 37 of Article 14 of the Constitution, as amended by Act 543 of 1948, see Redmon v. Sub-Sewerage District No. 1, etc., 226 La. 245, 75 So.2d 854, and, conformably with the provisions of Act 119

of 1950, the Sewerage District was vested with authority to establish, construct and maintain a sewerage system and issue negotiable coupon certificates for the payment of the cost of the improvements secured by local and special assessments levied on the property within the area benefitted by said sewerage system. Section 11 of the statute, as amended, reads:

"For a period of sixty (60) days from the date of the adoption of the ordinance levying a local or special assessment as provided for in Section 6 herein, any person in interest shall have the right to contest the legality of the said local or special assessment ordinances; *after which time, no one shall have any cause or right of action to contest the legality, formality or regularity of said assessments for any cause whatsoever.* Sewer certificates issued hereunder shall have all the requisites of negotiable paper under the law merchant, and shall not be invalid for irregularity or defect in the proceedings for their issuance, sale or delivery, and shall be incontestible in the hands of bona fide purchasers or holders for value thereof." (Emphasis ours.)

1. The ordinance was adopted on October 17, 1956 and the suit was not filed until April 22, 1957.

2. In the foregoing cases pleas of peremption were sustained under constitutional and statutory provisions quite similar to

The foregoing provision is explicit and, since plaintiff's suit was not filed until long after the sixty days from the adoption of the assessment ordinance had elapsed,[1] his right to attack the legality, formality or regularity of the assessment on his property, or any proceeding upon which said assessment is founded, has been foreclosed. See Nanney v. Town of Leesville, 198 La. 773, 4 So.2d 825; Carnahan v. Calcasieu Parish Police Jury, 199 La. 262, 5 So.2d 766; Humphreys v. City of Jennings, 185 La. 814, 171 So. 41; Sansing v. Rapides Parish School Board, 211 La. 936, 31 So.2d 169; Browning v. Webster Parish School Board, 212 La. 139, 31 So.2d 621; Dresser v. Recreation and Park Commission, 213 La. 85, 34 So.2d 384; Harrell v. Winn Parish School Board, 214 La. 1095, 39 So.2d 743; Redmon v. Sub-Sewerage District, 226 La. 245, 75 So.2d 854; McLavy v. American Legion Housing Corp., 227 La. 300, 79 So.2d 316.[2]

Plaintiff's complaints respecting the legality of the assessments and the proceedings upon which they are founded, must then be segregated from those complaints in which he challenges the right of the defendant Board to deliver the $1,525,000 of sewerage certificates and seeks to en-

those contained in Act 119 of 1950, as amended. There are many other cases in which like conclusions have been reached. Indeed, they are so numerous that it would be superfluous to cite them in this opinion.

join it from doing so. The latter are not subject to the pleaded peremption as the ordinance accepting the bid of Scharff & Jones, Inc. for these certificates was not passed until April 9, 1957.

We find the following contentions of plaintiff barred by the 60-day peremption:

(1) That the contracts for the construction of the project are invalid because the engineer's report was filed more than 10 days after the opening of bids in violation of Act 119 of 1950, as amended.

(2) That the assessment is void because the engineer's report to the Board of May 10, 1956 does not comply with the provisions of law in that it fails to show the amount chargeable to each lot or parcel of real estate and omits the legal descriptions of the various lots.

(3) That, in violation of Act 119 of 1950, as amended, the contract with Clement Betpouey, Jr. and Co. was signed more than 60 days after the receipt of bids.

(4) That, in violation of law, the Board, at a hearing on April 11, 1956, included certain streets in the project which had been eliminated therefrom at the original hearing and that this action was taken after the Board had received bids for the construction of the project.

(5) That the construction contracts awarded by the Board are invalid since they were signed without the Board having passed a resolution accepting the plans and specifications for the construction added by the hearing held on April 11, 1956, in violation of the specific provisions of the law.

(6) That the law was violated because the Board added cer-streets to the contract let to Clement Betpouey, Jr. and Co. without an advertisement for bids and the award of a new contract.

(7) That the Betpouey contract is invalid because the streets, as assessed on the assessment ordinance, are at variance with the streets upon which the contractor bid.

(8) That the Board was without authority to rescind the award of a contract to Binnings Construction Co. Inc., since it was the low bidder.

(9) That the contracts awarded by the Board are invalid because it has not included in said contracts any of the specifications or documents pertaining thereto.

(10) That the Betpouey contract is invalid because additional streets were added after the signing of the contract and the cost of the sewerage for these additional streets was increased.

(11) That the contracts are invalid because the engineering report, as revised, was filed more than ten days after the opening of bids and said report omits the amount chargeable to each lot or parcel and the legal description of said lots.

(12) That the assessment ordinance is invalid in that it provides that interest on the time installments shall be paid annually notwithstanding that Act 119 of 1950, as amended, provides that the interest payments shall be semi-annual.

(13) That the assessment ordinance is invalid for the reason that it provides that the first installment shall become due on December 31, 1957, whereas the law provides for the collection of said assessments on December 31st of the then current year, which should have been 1956, as the ordinance was adopted in that year.

(14) That the inclusion in the total cost of the project of the cost of a complete sewage treatment plant and the collection of such a cost under the special assessments levied by the 1956 ordinance is illegal because such contemplated sewage treatment plant cannot be considered sufficiently local in its nature to be paid for out of the special sewer assessments.

(15) That the proceedings on which the assessments are founded are in-valid because the notice for the hearing which was held on April 11, 1956 with respect to the increased cost of the entire project did not show the cost of the project insofar as the new streets to be added thereto were concerned and, therefore, was not sufficient notice to the parties owning property on the new streets which were included.

(16) That the proceedings on which the assessments are founded are invalid because, at the hearing held on April 11, 1956, there was a finding of benefits only with respect to the streets which were added to the project and no finding that the property originally assessed would continue to be benefited in an amount equal to the amount of the assessments levied against it, all in violation of the due process clause of the federal and state Constitutions.

(17) That the total assessment under the ordinance, amounting to $2,-420,351.32, is invalid and excessive because it includes therein the sum of $232,000 which is being furnished by the Federal Government as a grant to cover part of the cost of the construction of the sewage treatment plant.

There remains for consideration eight other complaints of plaintiff not barred by the statutory peremption to which we now address our attention.

■ Plaintiff contends that the issuance of the sewerage certificates to be dated May 15, 1957 and to mature annually on May 15th of each of the years 1958 to 1971, violate Section 7 of Act No. 119 of 1950, which declares that the sewerage certificates to be issued cannot extend over a longer period of time than that provided for by the ordinance levying the local or special assessments. Plaintiff's counsel points out that, since the special assessment ordinance adopted on October 17, 1956 provided for a first payment to be due on December 31, 1956 and for continuing payments on December 31st of each of the following years, 1957 to 1970 inclusive, there will not be sufficient funds collected to make the payments of principal and interest on the certificates as they mature and, therefore, it will be necessary to levy an additional assessment under the provisions of Section 8 of Act 119 of 1950.

We find no merit in the contention. The assessments levied are payable over a period of 14 years and are sufficient to liquidate the sewerage certificates, which extend over a like period of 14 years, on their due dates. This is all that the Act requires. At any rate, should the Board levy an additional assessment under the provisions of Section 8 of Act 119 of 1950, plaintiff will have the right to complain at that time.

■ Plaintiff's next contention is that the proceedings authorizing the issuance of the certificates are null and void because the certificates bear interest at the rate of 6% per annum up to May 15, 1958, whereas the installments to be paid by the property owners bear interest at the rate of only 5½% and, therefore, the Board will not have sufficient funds to meet the payment of interest when it becomes due on May 15, 1958.

The contention is likewise without substance for a number of reasons but we need only refer to one—that is, that the interest on the assessments levied under the ordinance of October 17, 1956 began to run from the date of its adoption and, hence, the 5½% rate payable from October 17th to December 31st 1956 will be sufficient to cover the additional ½ of 1% which will be required to be paid during the first year of the life of the certificates.

■ Plaintiff asserts that the resolution of April 9, 1957 authorizing the issuance of the sewerage certificates is illegal because it shows the cost of the project to be $2,580,351.32, whereas the engineer's report approved on the same date indicates that the cost will be $2,532,893.45.

The proposition is groundless. The difference between the engineering report and the statement of costs in the resolution is that the former does not include attorney's fees and legal expenses, amounting to $47,457.87.

Plaintiff assails the resolution authorizing the issuance of the certificates because it provides that the interest on said certificates shall be paid semi-annually, whereas the resolution of the Board providing for time payments by the property owners prescribes that the interest thereon be paid annually. It is said that, since the property owners are not going to pay interest on the unpaid installments semi-annually, the Board will not have sufficient funds to meet the interest payments due the certificate holders as they mature.

This conclusion drawn by plaintiff is factually inaccurate. Since the Board will be collecting interest from the property owners prior to the time that the interest on the certificates will become due, there should always be ample funds on hand to meet the semi-annual interest requirements applicable to the certificates.

■ Plaintiff's next claim is that the resolution authorizing the issuance of the sewerage certificates is invalid because it provides that the certificates may be called in their inverse numerical order at a premium of 5% notwithstanding that the 1956 ordinance makes no provision for the payment of any premium in the event of prepayment of installments and, therefore, at the time that any pre-payment of an assessment may be made and the Board collects only the amount due, there would not be sufficient money to call the said certificates for pre-payment.

It is difficult to perceive how this complaint, even if factually correct, could possibly affect the validity of the certificates. At best, it poses contingencies which may never occur and which could not adversely affect plaintiff even if they come to pass.

■ Plaintiff claims that the issuance of the certificates is unlawful for the reason that Section 8 of Act 119 of 1950 empowers and obligates the sewerage district to levy and collect additional local and special assessments on each lot or parcel in the area involved to pay in full the principal and interest on the certificates in the event the special assessments originally levied are insufficient to pay the principal and interest falling due in any one year. It is said that this provision grants to the district arbitrary powers and constitutes the taking of private property without due process of law.

We do not see how or why the assailed provision is illegal or unconstitutional. Obviously, the property owners receiving the benefit of the improvement must pay for its cost and, if the first levy proves to be inadequate, it is only proper that additional assessments be made, as long as they fall equally upon the abutting landowners.

■ Plaintiff charges that Act 119 of 1950 is wholly unconstitutional for two reasons. The first ground advanced by him is that the Act was introduced in the House of Representatives as a general statute,

which was read the first and second times in that form and, afterwards, amended to apply only to Jefferson Parish; that it was read only once in its amended form before its passage and that it should have been read three times as a special or local Act in order to fulfill the requirements of the Constitution.

■ The contention is not well founded. The Act was read on three different days in each House and that is all that is required by Section 24 of Article 3 of the Constitution. The fact that it was amended after the second reading to apply to Jefferson Parish alone did not necessitate that it be read, as amended, three more times as the subject matter of the bill had been read to the House·twice previously. See Allopathic State Board of Medical Examiners v. Fowler, 50 La.Ann. 1358, 24 So. 809 and State v. Bauman, 148 La. 743, 87 So. 732.[3]

■ Plaintiff's second contention is that the statute is unconstitutional because it was amended to apply solely to the Parish of Jefferson on the 26th legislative day of the Session and that this was not legally possible as it was the introduction of new matter after the expiration of the first twenty-one days of the legislative session.

The proposition is insubstantial. The bill, as originally drawn, was introduced within the twenty-one day time limit prescribed for the reception of bills by either branch of the Legislature. Its subsequent amendment restricting its application to the Parish of Jefferson was not the introduction of new matter within the meaning and intendment of Section 8 of Article 3 of the Constitution.

■ In a revised report of the engineer in connection with the project, which was adopted by the Board's resolution of April 9, 1957, there was shown a reduction in the number of the front feet of property previously assessed and a conformable reduction in the cost of the project. Yet, since the $9.60 per front foot assessment against property benefited by the proposed construction was not changed, plaintiff contends that the assessments previously made have become invalid and that the Board should be enjoined from issuing the certificates.

If it appeared that there had been a substantial reduction in the cost of the project or that there had been an increase in the number of front feet to be benefited with no increase in cost, plaintiff's complaint might be well founded, as this would constitute a material departure from the

---

3. The case of State ex rel. Caillouet v. Laiche, 105 La. 84, 29 So. 700, relied on by plaintiff is not apposite as, there, the bill was amended by one House, which amendments were never concurred in by the other House, nor were such amendments included in the bill as finally passed.

contract as contemplated without giving the abutting property owners credit for the reduced cost in one case and reducing the benefits to the property owners in the other. See Adams v. Town of Leesville, 210 La. 106, 26 So.2d 370. But we do not understand that any such thing occurred in this case. The supplemental and amended engineer's report of April 9th simply shows a reduction in the number of front feet involved in the project and a consequential reduction in the total cost thereof. The cost for the total front footage which will be benefited by the project still remains at $9.60 per front foot. In other words, by elimination of a number of front feet for which sewerage had been contemplated, the total cost of the project has been automatically reduced but the cost to the property still included in the project remains the same.

The judgment appealed from is affirmed.

### Motion to Waive Fourteen Days for Rehearing and Agree for the Judgment to Become Final Immediately

To the Honorable, the Supreme Court of the State of Louisiana:

On joint motion of both parties to the above entitled and numbered suit, appearing herein through their undersigned counsel, and on suggesting to this Honorable Court that they desire that the judgment rendered in this matter on the 14th day of

May, 1957 become final immediately upon its rendition, and do hereby jointly waive the fourteen days provided for an application for a rehearing in this Honorable Court.

It Is Ordered that the judgment rendered herein on the 14th day of May, 1957, be, and the same is hereby, made final, as of the date of its rendition.