SOMMERVILLE, J.
The plaintiff is domiciled in the parish of St. Landry. The defendant is domiciled in the parish of Orleans. And plaintiff, representing that it has a privilege upon certain logs belonging to defendant in Avoyelles parish, for money advanced to defendant for the purpose of cutting and hauling those logs, caused a writ of sequestration to issue from the district court of Avoyelles parish, and certain logs belonging to defendant were seized under said writ by the sheriff of that parish. Plaintiff asked that the defendant company be duly cited to appear and answer, and for judgment declaring the property seized to be subject to a privilege in its (plaintiff’s) favor, and that the same be ordered advertised and sold to meet and pay the sum of $2,434.74, with certain protest fees, interest, etc.
Defendant appeared in court and filed:
“The following peremptory exceptions: (1) That of ratione persones. (2) That of ratione materim.”
And it prayed for the dismissal of plaintiff’s suit. These exceptions were overruled.
Defendant appeared a second time, and petitioned the court for the release of the property on giving a forthcoming bond. In thus appearing to bond the property, defendant declared itself to be the defendant, and only a defendant is given the right to give a forthcoming bond in such case; and in such bond it made itself responsible that it would not send the property out-of the jurisdiction of the court, or make any improper use of it, and that it would present it, after the definite judgment, in case it would be decreed to restore the same to the plaintiff. Code of Practice, arts. 279, 2S0; C. O. 2980. Subsequently defendant appeared and answered, denying the existence of the privilege claimed by plaintiff, and asked for the dissolution of the writ of sequestration, together with damages in the sum of $1,000.
There was judgment in favor of the defendant, dismissing plaintiff’s demand, and in favor of plaintiff, dismissing the reconventional demand of defendant for damages. Plaintiff has appealed devolutively; but defendant has not appealed; and it has not asked for an amendment of the judgment against it.
[1] On motion to dismiss appeal: Defendant moves to dismiss the devolutive appeal taken in this case by plaintiff on the ground that this court is without appellate jurisdiction, for the reasons that the proceeding is one in rem, in which plaintiff has not asked for a personal judgment against defendant, and where plaintiff’s suit has been dismissed, the writ of sequestration issued in the suit has been set aside, and the property seized has been released, and because plaintiff has failed to suspend the execution of the judgment by obtaining a suspensive appeal, and furnishing a suspensive appeal bond; and it urges that as there is no property before this court, and as jurisdiction over the person of defendant was not acquired by the district court, this court is without appellate jurisdiction.
Act No. 64, of 1876, p. 106, provides that:
“ * * * In all cases of provisional seizure or sequestration the defendant may be cited, whether in the first instance or in appeal, either within the jurisdiction where the property revendicated, hypothecated or provisionally seized or sequestered is situated or found, though he has his domicile or residence out of that jurisdiction,” etc.'
The defendant was regularly cited; it regularly appeared in the district court; it is in court for all purposes of the suit; and it has judgment in its favor, dissolving the writ of sequestration. If the judgment had been in favor of plaintiff, it (the judgment) would have been only “operative up to the value of the property proceeded against, and not binding for any excess over the value of *863 the property in personam against the defendant.”
[2] In either event, appeals, suspensive and devolutive, might have been taken to the Supreme Court. Plaintiff has taken a devolutive appeal, and defendant must answer thereto. The motion to dismiss is denied.
[3] Plea of estoppel: Plaintiff has filed a plea of estoppel in this court, claiming that the defendant company is estopped to deny the privilege claimed by it (plaintiff), for the reason that it (the defendant) had admitted on several occasions, and represented to plaintiff, that the claim of plaintiff against it was secured by the privilege claimed on the logs sequestered, and as set forth in the petition filed in t(he cause. Defendant has moved to strike the plea of estoppel from the record. It is well settled that the law granting privileges is strieti juris, and that they cannot be created by contract or consent, or by estoppel. The plea will not therefore be further considered by the court.
[4] On the merits: This suit is on a customer’s check or draft of date February 1, 1912, payable February 15, 1912, drawn by D. W. Suiter, to the order of the Merchants’ & Farmers’ Bank, plaintiff, for $2,434.74, with interest, and accepted by the defendant, the Fischer Lumber Company. It is alleged by plaintiff that the money was advanced to D. W. _ Suiter, the agent of defendant, for the purpose of deadening and hauling logs belonging to defendant, the Fischer Lumber Company, and that it has a privilege upon said logs for the advances thus made. Plaintiff caused a writ of sequestration to issue, and certain logs belonging to defendant were seized under said writ.
Defendant answered that the money claimed by plaintiff as advances made to Suiter were not made on logs seized in this suit, and it asked for the dissolution of the writ. '
The evidence shows that D. W. Suiter was under contract with defendant, the Fischer Lumber Company, to cut and haul forest timber or logs controlled by the defendant company; that Suiter transacted business with the plaintiff bank, which advanced money to Suiter for the purpose of carrying out his contract with defendant; that defendant was aware that such business relations existed between Suiter and the bank; that Suiter would draw drafts in favor of plaintiff, which were accepted and paid by the defendant lumber company. The evidence also shows that Suiter was operating more than one camp; and that he was obtaining money from the plaintiff bank for operating said camps.
Defendant does not deny its liability on the draft accepted by it, which is attached to the petition filed in the case; but it simply denies the existence of the privilege claimed by plaintiff on the logs belonging to the defendant and seized in this suit.
The law is:
“That any person advancing money or furnishing supplies to enable another to deaden, cut, haul, float or raft any logs or forest timber, shall have privilege upon such logs or timber.” Act No. 33 of 1882, p. 47.
The only question before the court is whether the money represented by the draft attached to the petition of plaintiff was advanced by it “to enable another to deaden, cut, haul, float or raft” the logs or forest timber sequestered in this case.
The evidence of plaintiff is conflicting as to the origin of the customer’s draft which is made the subject of this suit. It (the draft) represents three customers’ drafts drawn by Suiter in favor of plaintiff and upon the Fischer Lumber Company, prior to February 1, 1912, for various amounts; yet Dr. Morgan, president of the bank, testified that on the date mentioned, February 1, 1912, he personally made the arrangements with Suiter, by which he placed to the credit of *865 Suiter the sum of $2,434.74 in the bank, and that Suiter subsequently drew on that amount to meet pay rolls due laborers. Again he says that Suiter had overdrawn his account some $600, $700, or $800 on February 1, 1912, and that part of the money advanced on February 1st went to pay that indebtedness, and that the balance, approximating $1,800, was placed to Suiter’s credit, and that it was subsequently used to pay off the laborers of Suiter. If this testimony is correct, the money was not used on the timber seized in this case, for that timber was hauled prior to December 1, 1911, and plaintiff could have no privilege on it for pay rolls and supplies incurred in 1912. This statement of Dr. Morgan is contradicted in part by Mr. Mangiarieina, cashier of the plaintiff bank, who states that the customer’s draft of February 1st was to extinguish three drafts issued prior to that date, and that the proceeds of the draft were not credited to Suiter’s account, and that no cash was paid out under said draft. He gives the date of the first of the three drafts as December 11, 1911, and December 25th or 26th as the date of the other two, aggregating $2,434.
He further testified that the several amounts represented in the draft of February 1st were advanced to pay labor rolls and for supplies of Suiter, while engaged in cutting and hauling the timber of defendant. But, when asked on cross-examination whether or not Suiter was building a railroad or tramroad, for defendant, he answered that he was, and that he could not tell whether any of the checks drawn by Suiter, and paid by the bank, about the time mentioned, went for building that tramroad or not¡ He insisted: “I am positive that some of it went for the handling of the logs.” When shown certain drafts dated in September and October, 1911, he testified that the money represented by them had been used by Suiter for the. building of a railroad; that they had passed through the plaintiff bank, and were honored by it. And he admits that the money “might have been used for paying the laborers working on the railroad,” referring to the draft sued upon; and that the bank cashed all drafts presented by Suiter as the “business was in such a shape that I did not know what to do.”
It is quite clear that the money advanced to Suiter by the plaintiff bank, who, the evidence shows, was operating two or more camps in the same vicinity, was obtained by him from the plaintiff bank for his several enterprises; and it is impossible for the court to say that the money represented by the draft sued upon was used for deadening and hauling the timber of defendant. It would rather appear that the bulk of it was not used for such purpose.
And this condition is made more certain by the testimony offered on behalf of the defendant showing that the timber belonging to it, and seized in this suit, on section 29, was not deadened, cut, and hauled in tie month of December, 1911, at the time that Suiter incurred, his indebtedness to the plaintiff bank. That testimony also shows that Suiter had contracts with other parties; that no logs whatever were hauled on the right of way of the defendant railroad, on section 29, after December 1, 1911; that all pay rolls and supply bills prior to December 1st were paid; that the loading during the month of December was done with logs at Bayou Jacque; that no work was done on defendant’s timber in December; that whatever money was paid by plaintiff on the December pay rolls of Suiter was for railroad work and hauling at Bayou Jacque; and that not one log was hauled and put on the right of way of defendant after December 1, 1911. And the president of the defendant company testified positively:
“That there was no amount of this draft expended on the logs now under seizure on the right of way of the Fischer Lumber Company.”
*867 The district judge, who saw and heard the witnesses testify, was of the opinion that plaintiff failed to show that the money claimed in this suit had been advanced by it to enable the log contractor, in the employ of the defendant company, to deaden, cut, and haul the timber seized in this suit, which timber belongs to defendant. Our conclusion is the same as that of the district judge.
Judgment affirmed.