No. 3881

Second Circuit

(First Division)

———

L. P. STEPHENS & CO. v. KELLOGG LBR. CO., INC.

———

(November 18, 1931. Opinion and Decree.)

———

L. P. Stephens, of Coushatta, attorney for plaintiff, appellee.

Hawthorne, Stafford & Pitts, of Alexandria, attorneys for defendant, appellant.

TALIAFERRO, J. Defendant owned hardwood timber in the parish of Red River and contracted with one J. P. Jones to cut and haul same to Crichton station on the railroad for a certain price per thousand feet, log scale. Something in excess of 300,000 feet was so hauled and delivered by Jones. While he was engaged in this work, he purchased from plaintiff supplies, etc., to enable him to fulfill his contract with defendant. In the early part of the year 1930, while the logs, or a goodly part of them, were at Crichton, plaintiff, becoming disturbed over the prospect of the logs being shipped away before the account due by Jones was paid, prepared to sequester them under the lien and privilege he assumed he had against them. An agreement was reached between plaintiff and defendant whereby, in order to obviate seizure of the logs, defendant committed itself to personal responsibility for Jones' account in so far as that account enjoyed a privilege against the logs in question, and agreed to litigate the question in the district court for Red River parish. The present suit is to recover the amount alleged to be due by Jones to plaintiff on the account, with recognition of lien and privileges on the logs. The amount sued for is $226.65.

Defendant denies that it is due plaintiff any amount; denies that any part of the account sued on was for supplies, money, etc., furnished Jones to enable him to cut, haul, and deliver the logs in question, but does not admit the correctness of said account; denies that plaintiff has a furnisher's lien and privilege on the logs.

There was judgment for plaintiff for $172.30 with recognition of a lien and privilege upon the logs mentioned. Defendant appealed.

The first point of defense urged by defendant is that the lien and privilege created by Act No. 33 of 1882 does not apply to and should not be construed to affect logs cut and hauled by one not the owner thereof, or the agent or employee of the

owner. In other words, since defendant owned the timber from which the logs in question were made and Jones was its contractor, one furnishing necessary supplies and/or money to enable Jones to cut, haul, and deliver the logs to the railroad for defendant's account, did not have a lien or privilege on said logs to secure payment of his account.

The act of 1882, on its face, is quite comprehensive. It is unambiguous, and certainly requires no hairsplitting construction to conclude that the legislative intent was definitely expressed in the clear and concise language therein employed. The title of the act reads:

"An Act creating a privilege upon logs and forest timber, in favor of the party advancing money or furnishing supplies to enable another to deaden, cut, haul, float or raft such logs or timber."

The language of the act follows the title closely.

It is argued by defendant that if the Legislature had intended that the lien or privilege should be operative against logs not owned by the one cutting and hauling same, such intention could have easily been expressed. That is true. However, on the other hand, if such logs were intended to have been excepted from the intent of the act, this intent could as easily have been disclosed. It is true that privileges, common to the civil law, are in derogation of common right and are to be strictly construed; but if the language of the law conferring the lien is clear and unambiguous, if it contains no exceptions or qualifications, it should be construed and enforced as written. The act simply gives a privilege to the furnisher of supplies upon the logs cut and hauled by the one purchasing the supplies. It is a right in rem regardless of ownership.

It is contended that if this lien is enforceable against logs of third persons it would be equivalent to the taking of property without due process of law, because the act makes no provision for the giving of notice of the existence of such liens and the owner has no means of ascertaining who has furnished the contractor to enable him to cut and haul the logs. It is conceivable that a case could arise where the timber owner could not ascertain from whom the logger had purchased supplies to enable him to operate, but it requires quite a stretch of the imagination to do so. There are risks to run in all lines of business. It is almost, if not wholly, impossible to conduct any sort of business without hazards.

By way of answer to this line of argument advanced by defendant we might mention that the lessor's privilege, granted by article 2707 of the Civil Code, may be enforced against the property of third persons left in the leased premises, without there being any prior notice whatever to the owner of the possible exposure of his property to the payment of the lessee's rent obligations. Our courts have enforced this harsh privilege uniformly. To some extent the same may be said of the privilege conferred by paragraph 3 of article 3249 of the Civil Code relative to the furnishing of materials and supplies that go into a building erected on land not owned by the contractor.

The Legislature has passed many acts for the protection of those who render service or perform labor for another engaged in the business of changing the form of property of third persons. In none of these acts, so far as our examination has extended, is the lien or privilege restricted to any extent by the fact of ownership.

Act No. 10 of 1890 gives a lien or privilege to any person who shall perform any labor or service in deadening, felling, etc., any logs or timber, on such logs or timber, and to any one cooking for a person engaged in such business, which lien shall be concurrent with that of the furnisher of necessary supplies.

Act No. 145 of 1888 creates a lien in favor of managers, mechanics, and laborers in sawmills, planing mills, etc., on the manufactured product to which their service or labor has contributed. There is no restriction of this lien on account of ownership. The right is one against the thing, the output of the service or labor rendered.

Act No. 154 of 1888 creates a lien in favor of any one advancing money or furnishing supplies to enable another to gather, pick, save, or prepare for market moss grown on trees in this state. This act also gives to the laborers who engage in this work a privilege on the moss gathered, which lien shall prime that of the furnisher of supplies. There is no restriction of the lien to the moss owned by the person who buys the supplies or hires the labor.

Act No. 53 of 1906 creates a lien and privilege in favor of threshermen for services rendered to any person, firm, or corporation, "on the crop of the said person, firm or corporation, which the said thresherman has threshed." It will be observed that the privilege under this act is restricted to the crop of the one for whom the threshermen render the service. If the language of this act has any special bearing upon the lien under discussion in the case at bar, such argues in favor of the construction we have adopted. In cases where the Legislature intended that the lien should be restricted in its effect by ownership that intent has been clearly expressed; if no such restriction is declared, then it follows, as a logical deduction, that the act was intended to have general effect and not be restrictive in its operation.

This question has not heretofore been passed on by the Supreme Court or any of the Courts of Appeal, so far as we are able to discover. The nearest approach to a decision touching the question is to be found in the case of Merchants' & Farmers' Bank v. Fischer Lbr. Co., 136 La. 860, 67 So. 932, 933. The facts of that case are these: One D. W. Suiter was under contract with the defendant lumber company to cut and haul logs owned or controlled by it. He performed his part of the contract. Plaintiff bank honored his accepted drafts on defendant and thus furnished him money to carry on his logging operations. Defendant did not deny liability on the draft sued on, but did deny the existence of the privilege, sought to be enforced, on the logs belonging to it, which had been sequestered. The court, in that decision, said:

"The law is:

" 'That any person advancing money or furnishing supplies to enable another to deaden, cut, haul, float or raft any logs or forest timber, shall have privilege upon such logs or timber.' Act No. 33 of 1882, p. 47.

"The only question before the court is whether the money represented by the draft attached to the petition of plaintiff was advanced by it 'to enable another to deaden, cut, haul, float or raft' the logs or forest timber sequestered in this case."

The court held that the evidence did not establish that the money advanced by plaintiff was expended in having the logs cut and hauled which it seized.

The syllabus of the case bearing upon this issue is as follows:

"A writ of sequestration will be dissolved where the plaintiff in writ fails to show that the money advanced by him was used to deaden, cut, haul, float, or raft the logs or forest timber belonging to another which have been seized under the writ."

While the right of the furnisher of money to a lien on logs not owned by the logger (to whom the money was furnished) was not directly at issue, the court inferentially recognizes that such is the law.

Our conclusion is that plaintiff had a lien and privilege on these logs of defendant, cut and hauled by Jones, and that the ruling of the lower court on this question is correct.

Defendant presses on our attention its position relative to the insufficiency of the proof adduced in support of the account sued on. The testimony introduced to sustain the account consisted of the evidence of plaintiff's bookkeeper and of Mr. Jones, the debtor. The testimony of the bookkeeper, who made no sales to Jones, of course, standing alone, is not sufficient to establish the correctness of the account. He could and did only give evidence as to what his books and records disclosed. However, Jones, sworn as a witness for plaintiff, admitted that the account was correct in detail and due by him. There is no intimation or suggestion of collusion between Jones and plaintiff. Certainly this evidence was sufficient to make out a prima facie case on the account and defendant has offered no testimony to contradict it, but simply relies on the asserted weakness of plaintiff's testimony. The account on its face contains no entries that attract especial attention or arouse suspicion. The evidence discloses that Jones purchased his supplies daily. No charge on the account for any one day exceeds $12.50, while most of them range between $4 and $8. It is conceded that for the period the account covers, save the first four days in October, Jones was engaged in hauling and cutting defendant's timber. We think the correctness of the account sufficiently established to base judgment upon.

Jones began work under the contract with defendant October 11, 1929, while the debits on his account with plaintiff commenced October 7th. He purchased supplies daily. Therefore, it is reasonable to assume that the supplies purchased prior to October 11th were not used while executing the contract with defendant. These amount to $27.35 and were excluded by the lower court. We agree with this conclusion. The account shows that beginning with October 11th and continuously until November 4th, Sundays excepted, Jones was charged with supplies each day.

The lower court also rejected the following named articles, charged in the account, for the reason that same were not necessary supplies under the act of 1882, and, therefore, not secured by lien or privilege on the logs seized, viz.:

| | |
|---|--:|
| 1 khaki shirt | $ 1.50 |
| 1 jumper | 2.00 |
| 1 pair shoes | 3.50 |
| 1 pair boy's overalls | 1.50 |
| 1 shirt, 2 socks | 2.00 |
| 1 pair gloves | 1.50 |
| 1 tie | 1.50 |
| 1 pair socks | .50 |
| 1 suit underwear | 2.00 |
| 1 pair socks | 1.00 |
| supporters 50c, tie $1.00 | 1.50 |
| 1 coat (leather) | 8.50 |
| Total | $27.00 |

It is obvious these goods were not of the class of supplies contemplated by the statute creating a lien for their security, and were properly excluded by the lower court. Plaintiff, in fact, does not complain of this ruling of the trial judge, but, in brief, asks that his judgment be affirmed.

Counsel for defendant, while conceding the correctness of the lower court's decision in excluding the supplies charged on the account prior to October 11th and the articles named above, insists that the following named articles on the account should also be rejected for the same reasons the above enumerated ones were, viz.:

| | |
|---|---|
| 1 roll cattle wire, $4.00, staples .10 | $ 4.10 |
| 1 saw $8.50, 6 files $1.20, 1 axe $2.50 | 12.20 |
| 2 single trees $1.50, 6 cold shuts .45 | 1.95 |
| 1 pr. mule shears, $1.25 | 1.25 |
| 12 cold shuts | 1.20 |
| 1 log chain | 5.50 |
| 1 pr. trace chains | .75 |
| 1 pr. wagon lines | 5.50 |
| 2 hame strings | .70 |
| 1 log chain | 4.50 |
| Total | $37.65 |

We have found no case, nor have we been cited to any, wherein the word "supplies," as employed in the act of 1882, has been defined or construed. What might be termed supplies in one instance would not be so in another, where the facts are different.

"In the construction of statutes, words are to be taken and construed in the sense in which they are understood in common language, taking into consideration the text and subject-matter relative to which they are employed." Martin v. Martin, 151 La. 530, 92 So. 46, 49; Civil Code, art. 14.

With regard to the statute under consideration, the supplies which must be furnished to bring into existence the privilege thereby created, must be of such character as to "enable" the person buying them to accomplish the purpose for which they are bought. Such supplies must consist of those articles of merchandise indispensable to the consummation of the particular work engaged in, whether immediately consumable, or of such nature as to require use for a season to be consumed or rendered of no value. To fell trees and convert them into sawlogs, axes, and saws and files are indispensable; to haul logs with mules or oxen, chains and harness are also indispensable; to inclose work stock used in logging, wire or other material is necessary for fencing.

If defendant's construction of this law be adopted, the only supplies that would be protected by privilege on the logs cut and hauled, would consist of food for men and work stock. Such a construction would be entirely too restrictive and would in a large measure defeat the law's purpose and intent. A contractor could have all the provisions needed to carry on logging operations, but without the tools and implements objected to by defendant, he would be unable to fell a tree or haul a log. The fact that such supplies are not immediately consumable, we do not think controlling.

We are of the opinion that the learned trial judge ruled correctly on all the issues tendered in this case, and for the reasons herein assigned, the judgment appealed from is affirmed.

McGREGOR, J. I dissent from that part of the majority opinion that allows a privilege for the items totaling $37.65.