No. 4174

Second Circuit

(Second Division)

CREECH v. DAVID
(ALLISON, Intervener)

(March 16, 1932. Opinion and Decree.)

J. S. Pickett, of Many, and William C. Pegues, Jr., of Mansfield, attorneys for plaintiff, appellee.

Fraser & Carroll, of Many, attorneys for defendant, appellant.

CULPEPPER, J. Plaintiff brought this action to recover on an alleged claim amounting to $390, with 5 per cent per annum interest from judicial demand, for labor performed by him and J. V. Christian, his assignor, in the capacity of oil field workers for defendant during the period from October 10, 1930, to November 18, 1930, inclusive, in the alleged "drilling and operation of one certain oil and gas well known as Tom David Smith No. 1, situated in Section 27, Twp. 8, Range 10, Sabine Parish, Louisiana."

. Plaintiff alleges he has a lien and privilege on the well, rig, machinery, appurtenances and appliances thereto attached, and on the lease on which the well is situated, for the amount of said claim; that he verily believes said rigs, machinery, etc., are about to be sold or removed; and

that he is entitled to and desirous of a writ of provisional seizure, prays for a writ to issue and provisional seizure of the lease, rigs, boilers, pipes, machinery, and appurtenances and appliances attached to the said Tom David Smith No. 1 well, and for recognition and enforcement of plaintiff's labor lien on said property to be provisionally seized.

Under the writ which was issued, there were seized, according to the sheriff's returns, the "lease, rigs, boilers, pipes, machinery and appurtenances and appliances attached on the well named, together with all leases annexed thereto and drilled thereunder."

Defendant answered, denying liability, and avers that such labor as was performed by plaintiff was performed for and while in the employ of the David Oil & Gas Company, Inc.; denied plaintiff has "any lien, privilege or right under the law" to a provisional seizure of the property in question; avers "that whatever labor may have been performed by plaintiff and others was in the sinking of a well in an effort to discover and produce oil and gas and that said well never became an oil well." It is further averred in the answer "that all of the labor performed by plaintiff and others was for and in the service of the David Oil & Gas Company, Inc., and that for all the wages due, they accepted and had issued to them shares of the capital stock of the company."

To the suit, L. D. Allison, filed an intervention and third opposition, claiming the ownership of the drilling rig, boilers, pipes, machinery, appurtenances and appliances which were provisionally seized; and alleges that plaintiff has no lien or privilege on same; prays that the seizure be dissolved and intervener be decreed the

owner, and possession restored to him of said property.

To the intervention plaintiff in suit filed exception of no right or cause of action, same being embraced in answer to the intervention, and, further answering, makes general denial of the allegations contained in intervener's petition.

Upon these pleadings the case was tried, resulting in a judgment for plaintiff as prayed for, rejecting the demands of the intervener, and decreeing plaintiff to have a lien and privilege upon "the lease, rigs, boilers, pipes, machinery and appurtenances and appliances attached to that certain oil and gas well known as Tom David Smith No. 1, * * * and under seizure herein," ordered said property sold and the proceeds paid to plaintiff upon his claim by preference and priority over all other persons. In the judgment the exception of no cause of action filed by plaintiff against intervener was expressly sustained and the intervention dismissed.

From the judgment both defendant and intervener took orders of devolutive and suspensive appeals. Intervener only has perfected the appeal, taken by him. Defendant in suit, Tom David, not having perfected his appeal, renders the judgment final as to him in so far as the hearing before this court at this time is concerned, and the issues are narrowed down to the contest between the plaintiff and the intervener.

The testimony discloses that the labor for which recovery is sought was performed in the work of drilling of the well in question in search of oil and gas; that the enterprise was unsuccessful, resulting in what is known as a "dry hole," which was abandoned.

It was admitted by all parties during the trial, and so entered in the record, that the drilling rig, machinery, etc., used in the work of drilling the well and which was seized, belonged to the intervener, L. D. Allison, who had leased it to defendant with which to do the drilling, the consideration for the use of which was the transfer to him of "certain oil and gas leases in the community."

The question for determination, therefore, is whether or not plaintiff in suit has a lien and privilege on the seized property to secure the payment of his claim.

Plaintiff relies upon Act No. 171 of 1928, the pertinent portions of which read as follows:

Section 1. "Be it enacted * * * That any person or persons who shall perform any labor or service in the operation of any oil or gas well or wells in this State shall have a lien and privilege on said oil or gas wells, rigs, and machinery, and appurtenances and appliances thereto attached for equipment and operation of the same, for the amount due for said labor or service."

Section 3 of the act provides that any person having such lien and privilege as created in section 1 of the act shall have the right to provisionally seize the property under which same is created, and have same sold for the payment of his claim.

Plaintiff's counsel reasons thus:

"Therefore, if the well * * * was an 'oil or gas well' within the meaning of this Act, plaintiff is entitled to the privilege which he alleged. In common parlance, when operations are begun to sink a well, for the purpose of exploring for oil or gas, the well is known as an 'oil well,' or less often it is known as a 'gas well.'"

Counsel further states that "the Legisla-

ture most likely intended this law to cover just the situation revealed in this suit"; that "unscrupulous and impecunious operators have frequently employed labor for the purpose of drilling wells to explore for oil and gas"; that "it often happens that when these wells failed to produce oil or gas in paying quantities, the well was abandoned and the laborers had no way of securing pay for their services."

It is well settled that liens and privileges do not exist unless expressly created by statute, and that they cannot be extended by implication or analogy, and that such statutes must be strictly construed.

This court had occasion to pass upon the identical point here raised in the case of J. R. Wesson v. John Woodley, Inc., ___ La. App. ___, 139 So. 676, decided February 16, 1932. The interpretation which we placed upon the Act No. 171 of 1928 was, that, strictly construed, it does not create a lien or privilege upon the rigs, machinery, appurtenances, and appliances used in the work of drilling a well in search of oil or gas, in favor of a laborer engaged in such work, but the lien or privilege is confined to the work of operating an oil or gas well after same has been completed and becomes a producing well. The statute uses the language, "any service in the operation of any oil or gas well." Certainly, "operating" a well cannot be construed to mean "drilling" a well. According to our view, an oil or gas well is not an oil or gas well until it has been drilled and produces oil or gas. If, when it is drilled to a certain depth, no oil or gas is found and produced, but is abandoned as a dry hole, it cannot be said to be an oil or gas well.

Plaintiff's counsel suggests that the Legislature "most likely intended" the statute to cover operations in drilling as well as operating such wells. But we are not permitted to indulge in likelihoods or probabilities as to the meaning of a statute that must be construed strictly as written. We must reason that the Legislature would have used the words "drilling and operating" if it had intended the act to cover drilling. Act No. 172 of 1928, which creates a lien upon oil wells to secure wages of laborers engaged in drilling and operating oil or gas wells, used the language, "drilling and operating oil or gas wells." So we find in this act the very thing we do not find in Act No. 171 of 1928, viz., the word "drilling," which is the word which counsel would have the court to read into the act. Since the Legislature has seen fit to read into one of the acts this word, and left it out in the other, we may reasonably infer that the lawmakers had an object in thus leaving the word out. Or, if it was an oversight, still we are not at liberty to supply it.

The district court, we think, erred in recognizing plaintiff as having a lien upon the property seized. Since we have concluded thus, it is clear that the court was also in error in sustaining the exception of no cause of action filed by plaintiff against the intervener. The exception should have been overruled.

For the foregoing reasons, the judgment appealed from is amended by decreeing that no lien or privilege exists in favor of plaintiff upon the property seized, and further decreeing that the writ of provisional seizure sued out be now dissolved and set aside, and the property delivered into the possession of intervener, L. D. Allison, as prayed for by him; and that, as thus amended, the judgment is affirmed.

It is further decreed that plaintiff in suit, Rollie Creech, pay costs of appeal.