## BLANKENSHIP v. STOVALL et al. *
### No. 4999.

Court of Appeal of Louisiana.
Second Circuit.
March 8, 1935.

Ponder & Ponder, of Many, for appellant.

J. S. Pickett, of Many, for appellee.

MILLS, Judge.

This suit is brought under the provisions of Act No. 161 of 1932; plaintiff alleging that wages totaling $150 are due him for labor performed on an oil and gas well located on land leased for oil and gas development in Sabine parish, La., under a verbal agreement with defendants, Cliff Stovall and the Coats Petroleum Corporation, nonresidents of that parish. The lease, well, and equipment, including a drilling rig, were provisionally seized, plaintiff asserting his lien and making oath that, to his belief, the lease and well were about to be abandoned and the equipment sold or removed.

A motion to dissolve the seizure filed in behalf of both defendants was sustained after

*Judgment amended on rehearing 160 So. 186.

478

trial as to the Coats Petroleum Corporation and all property released, except a drilling rig and equipment belonging to Stovall, as to whom the motion was overruled. The Coats Petroleum Corporation then filed an exception to the jurisdiction ratione personæ, which was sustained, finally removing that defendant from the case, as plaintiff has not appealed. Stovall then filed an exception of no cause or right of action, based upon the alleged unconstitutionality of Act No. 161 of 1932, which exceptor concedes was properly overruled on the authority of Young v. Reed (La. App.) 157 So. 809. Stovall then answered, denying all the allegations of plaintiff's petition.

After hearing on the merits, the lower court rendered a judgment in rem for the amount claimed in favor of plaintiff, and against Cliff Stovall, recognizing plaintiff's lien and maintaining the writ of provisional seizure as to the drilling rig. From this judgment Stovall has suspensively appealed.

Defendant's first contention is that the seizure should have been dissolved as to him because of the falsity of plaintiff's allegation of belief that the lease and well were about to be abandoned and the equipment removed. Testimony taken on trial of the motion to dissolve shows that the well was completed and brought in as a producer of between 75 and 150 barrels of oil per day, between the 15th and 20th of August, 1932; that at that time the drilling rig had been taken down and stacked on the lease preparatory to removal, which could be made in a day, and a standard rig, tanks, and equipment, valued at $2,500, moved onto the lease to be used in pumping the well and storing the oil. After the seizure, the drilling rig was bonded and removed. It is apparent that the fear as to the abandonment of the producing well was unfounded and unreasonable, but that the fear as to the removal of the drilling rig and equipment was justified. The question then is, considering the value of the other property subject to his lien, Was plaintiff within his rights in seizing the rig? It seems to us that this question is answered most positively in the affirmative by the developments in this case. The lower court, having dissolved the seizure as to all property but the drilling rig, plaintiff would be out of court had he not seized it. Unquestionably, he had a lien upon it, and unquestionably it was about to be and was, as soon as bonded, removed to another location.

We do not see how a laborer, having a lien upon a lease, oil well, and equipment, can be restricted in its exercise to the lease, well, or any particular article of equipment. It is well known that an oil well may be of great value one day and worthless the next. Furthermore, the action as instituted was one in rem. Young v. Reed, supra.

Stovall was a nonresident of the parish. He could only be subjected to the jurisdiction of the Sabine parish court by a seizure of his property. The privilege and relief granted in Act No. 161 of 1932 would, in many cases, be a vain thing if the seizure by a laborer or furnisher of materials were restricted to cases where he could prove a reasonable fear of abandonment of the well and lease. The remedy would be limited to cases of failure to bring in a producing well. We do not think any such narrow construction was intended by the lawmakers. We therefore conclude that the motion to dissolve as to Stovall was correctly overruled. The holder of a lien and privilege on several distinct pieces of property cannot be compelled to limit the lien to any particular piece. It is for him to determine what property he chooses to pursue. In this case, by not appealing from the judgment releasing the lease and well, he has acquiesced in that release and is now pursuing his remedy against the drilling rig alone. The question is not what other action he might have taken, but whether or not that which he did take was legal.

On the merits, the testimony shows that the well and lease were owned by Anderson Kerr, of Oklahoma City; that the well was being drilled by the Southland Drilling Company; that the rig was owned by Cliff Stovall and by him leased to the Southland Drilling Company for a period not to exceed thirty days, for a consideration of $500; that a man, named Craig, was employed by the Southland Drilling Company as driller, and that plaintiff was employed by Craig. He was therefore not working for Stovall, but was working on the rig owned by him and on the lease where the rig was placed, with his consent. Under these facts and the terms of Act No. 161 of 1932, the rig became subjected to plaintiff's lien, irrespective of its ownership. The act provides: "That any person or persons who shall perform any labor or service in drilling any well or wells in search of oil or gas or water, or who shall perform any labor or service in the operation of any oil or gas or water well or wells, shall have a lien and privilege on such oil or gas or water well or wells and the lease whereon the same shall be located and all drilling rigs, standard rigs, machinery, appurtenances, appliances, equipment,

buildings, tanks and all other structures thereto attached for drilling, equipment and operation of such lease, for the amount due for such labor or service." Section 1.

■ Defendant contends further that in any event plaintiff's privilege can only extend to that part of the work done after noon of July 28, 1932, for the reason that the Legislature adjourned July 7th of that year, and its acts did not become operative until twenty days thereafter. Plaintiff testified that he worked for the period from July 15 to August 16, 1932.

The record contains no proof as to the exact date Act No. 161 of 1932 went into effect. Section 27 of article 3 of the Constitution of 1921 provides: "All laws enacted shall go into effect at twelve o'clock, noon, on the twentieth day after the Legislature shall have adjourned."

In the case of State v. Bauman, 148 La. 743, 87 So. 732, 735, our Supreme Court adopts with approval the following doctrine: "We are of the opinion, therefore, on principle as well as authority, that whenever a question arises in a court of law of the existence of a statute, or of the time when a statute took effect, or of the precise terms of a statute, the judges who are called upon to decide it, have a right to resort to any source of information which in its nature is capable of conveying to the judicial mind a clear and satisfactory answer to such question; always seeking first for that which in its nature is most appropriate, unless the positive law has enacted a different rule."

The most appropriate and authoritative source accessible to us from which to learn the precise time when the act in question became effective is the notice appearing over the signature of the secretary of state on the very first page of the bound and published acts of that year, which notice reads as follows: "The Regular Session of the Legislature of 1932 which convened May 9th, adjourned July 7th, 1932."

Therefore, under the constitutional provision, the act became effective at 12 o'clock noon on the 27th day of July, 1932.

The prior Act No. 171 of 1928 granted a lien only for labor performed in the operation of an oil or gas well on rigs and machinery attached for equipment and operation of the same. It therefore conferred no lien for labor performed or on rigs used in the drilling of the well. Creech v. David, 19 La. App. 301, 140 So. 265.

■ Remedial or procedural acts may have a retroactive effect, but not acts affecting substantive rights. Act No. 161 of 1932 grants a lien and privilege theretofore nonexistent and cannot be retroactive.

■ It is therefore apparent that plaintiff in this case, there being no personal liability on the part of Stovall, can recover in this action only in rem for that part of his wages which accrued after noon of July 27, 1932. He demands pay for thirty days, from July 15 to August 16, 1932, at $5 per day. This is a period of thirty-one days. We can only assume that he worked on Saturdays and Sundays, with a one-day lay off. As he does not show when the lay off occurred, we must construe his testimony against himself and assume that it was during the period that he enjoyed the lien. This would entitle him to a lien for eighteen and one-half days, at $5 per day, or $92.50.

The judgment appealed from is accordingly amended by reducing its amount from $150 to $92.50, and, as thus amended, it is affirmed.