**SUTTON–ZWOILE OIL CO., Inc., v. BARR PETROLEUM CORPORATION, Inc.**
**(McDONALD et al., Interveners).**

No. 6024.

Court of Appeal of Louisiana. Second Circuit.

April 4, 1940.

Emile A. Carmouche, Jr., of Lake Charles, for appellants.

J. S. Pickett, of Many, and R. R. Stone and Albert J. Cox, both of Lake Charles, for appellees.

## TALIAFERRO, Judge.

Plaintiff sued on an account aggregating One Thousand Four Hundred Fifty-Nine and 96/100 Dollars ($1,459.96), the value of fuel oil, aquagel, baroid and other material and supplies, delivered to and used by the defendant, Barr Petroleum Corporation, Inc., in drilling a well in search of oil and/or gas on the Southeast quarter (SE ¼) of the Northeast quarter (NE ¼) of Sec. 27, Twp. 7 N, R 14 W, in Sabine Parish. These supplies and materials were furnished to defendant under an agreement that return thereof in kind would be made, or, in default, their value would be paid. No return was made, hence the account sued on.

Under appropriate allegations therefor, a writ of provisional seizure issued whereunder the drilling rig and derrick, with all attachments and appurtenances employed in drilling said well, the well itself and the mineral lease on said land, were seized. The lien and privilege established by Act 145 of 1934 is asserted against the seized property.

Harry McDonald intervened in the suit and sued the defendant on an account amounting to One Hundred Ten and 03/100 Dollars ($110.03), for material and supplies sold and delivered to it and used in drilling said well. He also sued on an account aggregating Four Hundred Sixty Four and 75/100 Dollars ($464.75) for labor furnished to repair said drilling rig, etc. He also sued out a writ of provisional seizure under which all of the property levied on by plaintiff was seized.

G. C. Koch and George Meier also intervened. Koch asserted ownership to the entire drilling rig which had been twice previously seized. He alleged that the rig was "furnished" defendant under the terms of a written contract with one Albert Reich, which defendant assumed, for forty-five (45) days (from June 1, 1938, to July 15, 1938) whereby he, for the use of the rig, was to receive Seven Thousand Five Hundred ($7,500) Dollars in oil, should any be produced, and, in the event of no production, he was to be paid Five Hundred ($500) Dollars in cash, together with the cost of dismantling, removing and re-erecting the rig. He further alleges that defendant had abandoned the well and had notified him of its inability to take down, remove and re-erect the drilling rig, and requested that he do so; that under the terms of said written contract, defendant's right to use the rig for the consideration therein named, ceased on July 15, 1938; that it was also used by defendant in drilling said well until September 28th, an additional forty-four (44) days, for which use he is entitled to recover a reasonable amount, averred to be Two Thousand ($2,000) Dollars; that the cost of taking down, removing and re-erecting the rig will be Three Thousand Five Hundred ($3,500) Dollars. He denies that the derrick is subject to any lien or privilege in favor of plaintiff or Harry McDonald, intervenor. He prays for judgment for Seven Thousand ($7,000) Dollars (the items amount to only Six Thousand Dollars) against defendant with recognition of the lien and privilege granted by Act 145 of 1934 against the mineral lease under which said well was drilled. He also prays to be decreed the owner of the rig, free of any lien in favor of plaintiff and/or Harry McDonald.

Meier claims ownership of the derrick and sub-structure used in drilling the well. He alleges that said derrick and sub-structure were "furnished" by him to defendant under a written contract with one Albert Reich, assumed by defendant, wherein it was stipulated that he would be paid Five Thousand ($5,000) Dollars for the use of the property from June 1, 1938, to July 15, 1938 (45 days), and the expense of dismantling, removing and re-erecting it, which, he avers, would be Eight Hundred ($800) Dollars; that defendant had abandoned the well and had notified him of its inability to comply with the contract in this respect; that said derrick was used by defendant until September 28th, an additional forty-four (44) days, such use being worth Seven Hundred Fifty ($750) Dol-

lars, which he is entitled to recover. He prays for judgment for Six Thousand Five Hundred Fifty ($6,550) Dollars and that the lien and privilege provided by Act 145 of 1934 on the said oil and gas lease be recognized, etc. He denies that the derrick and sub-structure are subject to any lien or privilege in plaintiff's or McDonald's favor. He also prays that he be decreed the owner of said property, free of any lien or privilege in favor of plaintiff and/or Harry McDonald.

Defendant did not answer either intervention. Issue as to him was joined by default. Its domicile is in Calcasieu Parish. It excepted to the jurisdiction of the court ratione personae in plaintiff's suit, and answered. The answer is in effect a general denial with some special pleas, which, in view of subsequent developments, need not be summarized.

Plaintiff denied generally all the allegations of the three interventions.

McDonald generally denied the allegations of the intervention of Koch and Meier.

After trial and submission of the case, including interventions, defendant filed an exception of no cause and no right of action. This was overruled.

There were judgments against defendant as follows:

1. In favor of Harry McDonald for $464.15, representing labor claim, with recognition of first lien and privilege upon all the property seized, and also for $110.03 for material and supplies.

2. In favor of plaintiff for $1,459.96.

3. In favor of G. C. Koch for $2,000.

4. In favor of George Meier for $750.

The lien and privilege asserted by all parties as furnishers of material and supplies used in drilling the well were recognized and decreed to be concurrent upon all the property seized under the writs, with these exceptions:

(a) The derrick and sub-structure were excepted from the lien and privilege recognized in favor of George Meier, whose ownership thereof was recognized.

(b) The drilling rig was excepted from the lien and privilege recognized in favor of G. C. Koch, whose ownership thereof was recognized.

It was ordered that the property seized be sold for cash by the sheriff, and from the proceeds of sale that McDonald be paid $464.15 by preference and priority over the other judgment creditors; that the balance of the proceeds of sale, after payment of costs, be applied to the payment of the other judgments concurrently in the proportion which each bears to the said balance of proceeds.

The plea to the jurisdiction of the court ratione personae was sustained; the money judgments are in rem only.

Intervenors, Koch and Meier, appealed. Plaintiff and McDonald answered the appeals and prayed that the judgments in favor of appellants be reversed and their demands be rejected in toto.

Since defendant has not appealed nor answered the appeals, the judgments, so far as they concern him, except wherein challenged by and are shown to be prejudicial to the rights of plaintiff and McDonald, may not be disturbed here.

■ The appellants have made no appearance in this court nor have they filed briefs or otherwise indicated further interest in the case. It is safe to assume that they have abandoned their appeals. We shall consider the appeals as having been abandoned. This leaves for determination only the questions raised by the answers to the appeals.

■ Koch and Meier, respectively, leased to Albert Reich the drilling rig and derrick involved herein by written contract, the terms and conditions of which are clearly expressed. Defendant having assumed Reich's obligations under the lease and having used the chattels covered thereby in drilling the well, of course, is bound thereunder as fully as Reich would have been. The term of each lease is definitely fixed at forty five (45) days. The stipulated rent, contingent entirely as to Meier and partly so as to Koch, for the use of the leased chattels for this term, is also definitely fixed. Continued use of the chattels by defendant, without protest or objection from the lessors, after the expiration of the lease term, amounted to reconductions of the leases on the same terms and conditions as are contained in the original contract. Civil Code, Art. 1817, on the subject, reads: "Silence and inaction are also, under some circumstances, the means of showing an assent that creates an obligation; if, after the termination of a lease, the lessee continue in possession, and the lessor be inactive and silent, a complete mutual obligation for continuing the lease,

is created by the act of occupancy of the tenant on the one side, and the inaction and silence of the lessor on the other."

Therefore, the venture being unsuccessful, the well being a "dry hole", Meier is entitled to no compensation for the use of his property for the term of the reconduction. His contract was of an aleatory character in its entirety. Had the venture been successful, he stood to profit substantially; but, since not successful, he finds himself in the position of one who, in a manner, gambles on the happening of an uncertain event and loses.

Koch's position is different from Meier's only in that he was to be paid Five Hundred ($500) Dollars in cash even though the well never produced. He is entitled to recover this amount and an equal amount under the reconduction.

The leases contain a stipulation that the lessee, after he had ceased using the chattels, would, at his expense, dismantle and remove them to and re-erect them on other sites, described in the contract. Defendant did not do this. As we view this feature of the agreement, it was merely an incidental stipulation and forms no part of the lease, strictly speaking. Defendant's default thereunder gives rise to a personal action against it for the amounts necessarily expended in doing that which his default caused. Such expense cannot, in any sense of the term, be classed as rent or compensation due for the use of the chattels. The lien and privilege of the statute invoked does not extend to such outlays; and, as the lower court properly held, these actions being in rem, no relief may be had herein on these accounts.

Act 145 of 1934, inter alia, provides: "That any person * * * who shall * * * furnish any fuel, drilling rigs, standard rigs, material or supplies whatsoever for or in connection with the drilling of any well or wells in search of oil, gas or water * * * shall have a lien and privilege on such oil, gas or water well or wells and the lease whereon the same shall be located, and on all drilling rigs * * * equipment * * * appurtenances * * * and all other structures thereto attached for drilling, equipment and operation of such well or lease, for the amount due for such * * * drilling rigs * * *."

In leasing the drilling rig to defendant, Koch, within the meaning of the statute, "furnished" same to it to drill the well. The fact that their relation was that of lessor and lessee does not affect their relative rights and duties under the above quoted part of the act. Of necessity, if the oil well promoter has no rig of his own, he must secure the use of one from some person who has; and, when the owner, for a consideration, delivers possession of such a rig to the promoter to be used in drilling a well and it is so used, he is protected by the lien and privilege established by the 1934 act for the amount due him; and, as against such property, the other classes of creditors named in the act may enforce the lien and privilege vouchsafed to them to secure payment of their claim.

The operative effect of the lien and privilege created by Act 145 of 1934 is to no extent affected by the ownership of the property employed in drilling a well. They affect the property although it be not owned by the promoter, as effectively and completely as though he were the owner. The act, in effect, ordains that this lien and privilege shall operate against *every sort of property used to drill the well*. No reference is made to ownership as a condition precedent to the efficacy of the lien and privilege. Blankenship v. Stovall et al., La. App., 159 So. 477; Boudreaux v. Moon Oil Co., Inc., La.App., 158 So. 672, 673.

The court in these cases construed Act 161 of 1932. Act 145 of 1934 is virtually a re-enactment of the former act, with the operative effect of the lien and privilege very much enlarged. In each of these cases it was held: "Under statute providing for lien and privilege on 'all drilling rigs,' laborer has lien and privilege on drilling rig used in drilling of oil well on which labor has been performed no matter whether rig belongs to employer or not (Act No. 161 of 1932, § 1)."

L. P. Stephens & Co. v. Kellogg Lumber Co., Inc., 18 La.App. 507, 137 So. 769 is analogous.

Neither Koch nor Meier sued out a provisional seizure. Each simply alleged that his claim was secured by a lien and privilege upon the *mineral lease* on which the well was drilled, and prayed that such lien and privilege be recognized and enforced against said lease. The lower court overlooked the restricted nature of the relief these intervenors sought and prayed for, and held that each had a lien and privilege on all the property seized by plaintiff and McDonald, and should share in the

proceeds of the sale thereof after judgment for McDonald's labor claim was paid, excepting as to Koch, the drilling rig, and as to Meier, the derrick and sub-structure.

For the reasons herein assigned, the judgment in favor of George Meier is annulled, reversed and set aside, except in so far as it recognizes him to be the owner of the derrick and sub-structure claimed by him, and his intervention, with this exception, is dismissed.

And for said reasons, the judgment in favor of G. C. Koch is reduced to One Thousand ($1,000) Dollars, with five per cent (5%) interest thereon from September 20, 1938, until paid, and the operative effect of the lien and privilege securing payment thereof is restricted to the mineral lease referred to; and in this connection, it is ordered that said mineral lease be sold separately from the other seized property; that proceeds of sale thereof, after proportionate contribution therefrom toward payment of the judgment in favor of Harry McDonald for labor claim, shall be paid over to Koch, to the plaintiff and to McDonald, intervenor, on his judgment for supplies, concurrently, and in the proportions that the amounts of their judgments bear to said proceeds.

Except as herein reversed and/or amended, the judgments appealed from are affirmed. All costs shall be paid from the proceeds of sale.