H & F BARGE COMPANY, INC.

v.

GARBER BROTHERS, INC. and Charles L. Garber, Individually.

Civ. A. No. 73–3222.

United States District Court, E. D. Louisiana.

Oct. 31, 1974.

**6**

Charles M. Steen, New Orleans, La., for plaintiff.

Joaquin Campoy, William S. Stone, New Orleans, La., for defendants.

ALVIN B. RUBIN, District Judge:

A complaint was filed on December 10, 1973 by H & F Barge Company, Inc. (H & F) against Garber Bros., Inc., to recover for damage sustained by plaintiff's steel deck barge U–803 while under charter to defendant. The complaint, which was delivered to defendants in Berwick and/or Morgan City, within the Western District of Louisiana, on December 19, 1973, also claimed that additional charter hire was due. No appearance by answer or otherwise was entered within the time prescribed by law, and plaintiff caused a preliminary default to be entered by the Clerk on January 30, 1974. The Court referred the matter to a Special Master to determine damages. After hearing evidence presented by plaintiff

on February 14, 1974 and May 28, 1974, the Special Master recommended that plaintiff receive damages totaling $55,110.00. In accordance with this recommendation a default judgment in favor of plaintiff and against defendant was subsequently entered by the Court on June 20, 1974, in the above stated amount, plus interest and costs.

After the time for appeal from the judgment had expired, the plaintiff attached funds maintained by Garber Bros. in a bank account in New Orleans to satisfy the judgment. Defendants then appeared for the first time in the proceeding on August 8, 1974, and, pursuant to Rules 55(c) and 60(b) of the Federal Rules of Civil Procedure, moved to vacate and set aside the preliminary default, the order of the Court approving the Special Master's Report and Recommendation, and the final judgment. Defendants also moved, pursuant to Rule 62(b) of the Federal Rules of Civil Procedure, to stay execution of the judgment pending the Court's ruling on the motions under 55(c) and 60(b).

Upon appropriate security being furnished by defendant Garber Bros., execution of the judgment was suspended, and the Court scheduled a special hearing on October 1, 1974 at which time plaintiff and defendant were to be given an opportunity to present evidence on the question of whether the default should be set aside, and whether the final judgment should be set aside or modified.

At the hearing Garber Brothers abandoned its motion to set aside the default for excusable neglect. Many of the pertinent facts are admitted in the pre-trial memoranda, and these agreed upon facts are not repeated except to the extent that clarity requires.

H & F was owned and managed by Frank Riess and Harold DeWailly. Both of them were at all material times, and still are, employees of American Marine Corporation. Mr. Riess is employed by American Marine as a salesman. American Marine Corporation is engaged in the business of building and repairing various types of vessels. It

built the steel deck barge U–803 in 1958, and sold it to H & F Barge Company in August, 1969.

H & F chartered the U–803 to Garber Bros., Inc. on January 6, 1970, under a written charter party that provided a charter term of 12 months at a rate of $55 per day, payable monthly.

Garber Bros., Inc. is a Louisiana corporation with offices in Berwick, Louisiana. However it does business throughout Southern Louisiana, and does business in the geographical area comprising the Eastern District.

The charter party provided that Garber would be responsible for any loss or damage sustained by the barge during the term of the charter, ordinary wear and tear excepted, subject to a provision relative to insurance hereinafter set forth. (Paragraphs 4, 7).

The charter party required Garber to carry insurance on the barge in the amount of $60,000, and provided that, in the event of loss or damage to the barge, any amount collected from the insurance company for such loss or damage would be used to reduce the liability of the charterer to the extent of the amount collected from the insurance company, charterer being liable for the balance, if any. (Paragraph 9).

The charter party provided that, in the event the barge sustained damage during the term of the charter, charter hire would not cease, but on the contrary would be paid until the termination of the charter. (Paragraph 5).

The charter party made no mention of whether the barge did or did not carry a Load Line Certificate issued by the American Bureau of Shipping, or whether the barge had or had not been certificated by the United States Coast Guard for any particular type of operation as of the time the barge was chartered to Garber. However the charter contemplated offshore operations and this would require the barge to have a Load Line Certificate and would also require certification by the Coast Guard.

After the charter period commenced on January 6, 1970, H & F billed Garber monthly for the charter hire, computed at a daily rate of $55 per day, and Garber paid the hire at that rate through May 31, 1971. However, as of June 1, 1971, the charter hire rate was increased by oral agreement to $60 per day, and Garber was thereafter billed, and Garber paid, charter hire monthly at that daily rate.

H & F did not call for the return of the barge when the term of the charter party expired on January 5, 1971. A new barge was delivered to Garber in June, Garber also kept the U–803. There is testimony that U–803 was kept as a mere accommodation to Riess and DeWailly and to retain their good will, but I do not credit this, and I find that the barge was in fact used by Garber for its own business purposes. Garber continued to use the barge beyond January 5, 1971, and continued to pay charter hire monthly, at a rate of $60 per day, through March 22, 1972.

Garber returned the barge without notice to H & F and without agreement to terminate the charter on March 22, 1972. H & F did not acquiesce in the return nor was it asked in advance or at no time of return to accept return of the barge.

Garber delivered the barge to the American Marine Corporation dock on March 22, 1972. It was moored at a place indicated by American Marine Corporation personnel, but without H & F's knowledge nor consent. The invoice for March was paid, but no charter hire was paid past the end of March nor was any invoice sent for hire past that date.

On March 29, 1972, H & F had the barge inspected by Marine Surveyors Bachrach & Wood Associates, Inc., as it lay afloat at the American Marine Corporation dock in New Orleans. All manhole covers were sealed, and the barge was not on drydock, so no internal inspection of the bottom was made. Garber was invited to attend that survey but did not do so.

Messrs. Bachrach rendered a report dated April 5, 1972, entitled "Off Charter Sur-

vey," concerning their inspection of the barge on March 29, 1972.

On May 22, 1972, Bachrach & Wood inspected the barge at American Marine Corporation's facility at Hahnville. On this occasion the barge was hauled out on drydock, and Messrs. Bachrach were therefore able to inspect the barge for below-water damage.

H & F notified Garber that a claim would be made that the barge had sustained damage while under charter to Garber, and Garber was invited to attend a survey to be held while the barge was on drydock at the American Marine Corporation dock at Hahnville, Louisiana on May 22, 1972.

Messrs. Bachrach rendered a report dated April 5, 1972, concerning their off charter survey and inspection of the barge on March 29, 1972, and compared their findings as to damage on these occasions, insofar as was possible, to findings which they had made on July 14, 1969, when they had made an on charter survey for another charterer some 6 months before Garber became involved with the barge in January, 1970.

In their April 5, 1972 report, Messrs. Bachrach listed the above-water damage to the barge which they considered was greater than the damage noted during the course of their July 14, 1969 survey, and they expressed the opinion that such additional damage was sustained during the period that the barge was under charter to Garber.

Messrs. Bachrach estimated that the cost of repairing the above-water damage attributed to Garber, would, as of May 29, 1972, amount to $13,270.48. They made no survey of underwater damage on that date.

On June 9, 1972, Bachrach rendered a report of the underwater damage survey made on May 22, 1972. Messrs. Bachrach estimated, in their report dated June 9, 1972, that the cost of repairing the bottom damage to the barge which they found to exist on May 22, 1972 would be $9,956.02.

On May 25, 1972, H & F wrote Garber a letter making claim for $18,018.00, being the amount of an estimate submitted by American Marine Corporation to repair both the above-water and underwater damage, in excess of normal wear and tear, noted by Messrs. Bachrach in their surveys of the barge on March 29, 1972 and May 22, 1972.

In its May 25, 1972 letter to Garber, H & F made no claim that any charter hire was due for any period subsequent to March, 1972, when Garber had returned the barge to H & F. However nothing was said to indicate that any claim for any sum due under the charter was waived.

On June 6, 1972, at the request of H & F, Messrs. Bachrach inspected the barge for insurance purposes, and rendered a report dated June 7, 1972 in which they estimated that the market value of the barge as of that time was $15,000, and the estimated replacement value was $50,000. In an earlier report of a survey of the barge conducted at the request of Garber on October 22, 1971 for insurance purposes, Messrs. Bachrach had estimated that the market value of the barge as of that time was $30,000, and the estimated replacement value was $75,000.

With the knowledge and approval of H & F, Garber submitted H & F's claim for damage to the insurers of the barge, but the insurers ultimately denied coverage of the damage on the ground that it had not been shown that the damage was attributable to any specific casualties.

On July 24, 1973, Mr. Kelleher Riess, in his capacity as attorney for H & F, wrote a letter to Garber making formal demand for $18,018, being the amount of the repair estimate previously submitted by American Marine Corporation in May, 1972. Along with his letter of July 24, 1973, Mr. Riess sent Garber an invoice of Villere Marine Corporation, an American Marine Corporation affiliate, in amount of $5,466, for temporary repairs to the barge which Villere Marine indicated had been performed on May 19, 1972.

The matter was not resolved, and on December 10, 1973, H & F filed a complaint in this cause against Garber Bros., Inc., and

against Garber Bros.' president, Charles M. Garber, individually, in which demand was made for $50,000 as the estimated cost of repairing the barge, plus $17,340 for alleged unpaid charter hire due for the period March 22, 1972 until January 5, 1973. Plaintiff has conceded that Charles M. Garber was proceeded against individually through error, and the complaint against Mr. Garber has been dismissed.

The complaint was delivered by the United States Marshal on December 10, 1973 to Mr. Charles L. Roy, a registered agent for service of process for Garber Bros., Inc., in Berwick, Louisiana within the Western District of Louisiana. No appearance was entered by either defendant in the proceeding, by answer or otherwise, within the time prescribed by law, and on January 30, 1974 plaintiff caused a preliminary default to be entered by the Clerk against both defendants.

The Special Master issued a written report on June 13, 1974, recommending that Garber be ordered to pay plaintiff $40,464 as the estimated present cost of repairing the barge and restoring an American Bureau of Shipping load line certificate which apparently was lifted following the previously-described damage surveys in March and May, 1972. The Special Master also recommended that plaintiff be allowed to recover the sum of $5,466, being the cost of repairs which Villere Marine Corporation had made to the barge at some time between May 10, 1972 and December 29, 1972. The Special Master also recommended that plaintiff be allowed to recover charter hire, at the rate of $60 per day, for the period March 22, 1972 to January 5, 1973, or $17,-340, less $8,160 which plaintiff had received from another charterer or charterers during that period; thus the recommendation by the Special Master was that plaintiff should receive $9,180 as charter hire for the period March 22, 1972 to January 5, 1973.

Thus, the Special Master recommended that plaintiff should receive the total sum of $55,110 to compensate it for damages, including the cost of repair and incidental expenses, and for barge rental during the period March 22, 1972 to January 5, 1973.

■ The Court concludes that Mr. Garber knew of the suit, knew of service of process, and neglected to appear without any justifiable cause simply because, "I didn't do no business with no lawyer." While the suit was instituted in the Eastern District, Garber's only office was in the Western District. However, Garber does business in the Eastern District.

Garber was properly served by the United States Marshal through its registered agent for service of process in the Western District of Louisiana. Its motion to set aside the default for lack of jurisdiction and for improper venue are both denied for reasons set forth in a separate opinion dealing only with those issues, 65 F.R.D. 399.

■ The evidence adduced at the hearing confirms the magistrate's finding of the present cost of repairing the barge. I conclude, as I did in my oral reasons at the hearing, that H & F did not violate any duty to mitigate damages by failing to have the barge repaired at an earlier time, for it would have been imprudent, as a business matter, to have the work done then on funds borrowed, as would have been necessary, as Mr. Riess' personal endorsement at a time when he was in poor health and when they could recover only by litigation, a litigation that is only now, over 3 years later, reaching final judgment.

■ The magistrate applied principles of Louisiana law in determining whether the charter had terminated. A charter party, being nothing more than a bailment contract, is governed by the law of the state wherein it is made. *Arnold Bernstein Shipping Company v. Tidewater Commercial Company*, D.C.N.Y. 1949, 84 F.Supp. 948 and *Marine Transport Lines, Inc. v. Publicker International, Inc.*, D.C.Pa.1969, 303 F.Supp. 423, and *Stoufflet v. Cenac Towing Co., Inc.*, D.C.La.1964, 236 F.Supp. 198; *McDonough Construction Co. v. H. B. Fowler and Co.*, D.C.La.1968, 281 F.Supp. 90.

■ The defendant argues that the charter contract, under the laws of Louisi-

**10**

ana, could only have been reconducted on a month-to-month basis. The case cited in support ·of this proposition deal with the reconduction of a fixed term lease of premises. Louisiana Civil Code Article 2685 is cited as the basis of this decision. A bailment, however, is the lease of a *movable* and is, therefore, not governed by these provisions of the Civil Code. Reconduction in the instant case is founded upon Louisiana Civil Code Article 1817 which provides, in part, "if, after termination of a lease, the lessee continues in possession, and the lessor is inactive and silent, a complete mutual obligation for continuing the lease, is created . . ." See *Sutton-Zwoile Oil Co. v. Barr Petroleum Corp.*, La.App. 2 Cir. 1940, 197 So. 432).

The Special Master had before him relevant and competent evidence supporting his conclusions and judgment on the facts. Even were the matter before me on direct review of his determination, I would affirm him. But it must be noted that the time for review has expired, as has the time for appeal. Certainly something more must be shown to make a case to set the final judgment aside.

Plaintiff's attorney did much more than could be reasonably expected to encourage defendant to seek counsel and make an appearance herein prior to the taking of the default and judgment. This Court is well aware of the correspondence, telephone communications and efforts extended by plaintiff and plaintiff's counsel in this regard.

Now, after two hearings, exhaustive research, preparation of memoranda of law, recommendations for judgment, and final judgment, defendant herein would have the Court turn all of this aside and begin a hearing on the merits. Testimony has been previously introduced herein that the H & F Barge Company is not a wealthy corporation. The expense and time requirements of this litigation have been substantial. Based on the authorities cited above, and the overall requirement that once a matter has been fully litigated and judgment rendered, it be brought to a prompt conclusion through satisfaction of such judgment; the Court denies the defendant's motions.